Anne Brennan NALLE, Executrix of the Estate of Edmund Cary Nalle, Deceased, and individually, Appellant,

v.

The FIRST NATIONAL BANK OF BALTIMORE, Trustee, Appellee.

No. 13077.

United States Court of Appeals Fourth Circuit.

Argued April 8, 1969.

Decided July 10, 1969.

Paul R. Harmel, Washington, D.C. (Earle, Duke & Williams, St. Petersburg, Fla., on the brief), for appellant.

Edmund P. Dandridge, Jr., Baltimore, Md. (C. Van Leuven Stewart, and Venable, Baetjer & Howard, Baltimore, Md., on the brief), for appellee.

Before HAYNSWORTH, Chief Judge, and SOBELOFF and BUTZNER, Circuit Judges.

BUTZNER, Circuit Judge:

In this diversity action, the district judge held that a settlement agreement executed by Anne B. Nalle barred her claim to the principal of an *inter vivos* trust created by her deceased husband. We affirm because the findings of fact upon which the district court's decision is premised are not clearly erroneous.[1]

In 1957, E. Cary Nalle executed an *inter vivos* trust in which he reserved the income to himself for life, and then for life to his sister, niece, and nephew. Upon the death of the surviving life beneficiary, the principal of the trust was to be distributed to three charitable organizations. He retained the right to revoke the trust by written notice delivered to the trustee, First National Bank of Baltimore. Nearly all of his assets were placed in the trust, and at the time of his death it was valued in excess of $850,000.

In October 1962, at the age of 88, Nalle married Anne Brennan, age 62, who for many years had been a friend of both Nalle and his first wife, who had died in 1956. After their marriage, Nalle moved from Baltimore to his wife's home in Washington, D. C., where she continued to work in a responsible government position. She testified that she was not aware of the extent of her husband's wealth until several months after they were married, when he told her the value of the trust and that upon his death she was to have everything he owned.

In June 1963, eight months after his marriage, Nalle died leaving an estate of approximately $73,000 apart from the trust. His will, written after his second marriage, left $1,000 to his nephew, $4,000 and certain household property to his niece, and the residue of his estate to his widow. She was named executrix.

Before his death, Nalle did not revoke the trust by written or oral notice to the trustee, and his will made no reference to it. Consequently, the trustee and the beneficiaries insisted upon the validity of the trust. Mrs. Nalle, on the contrary, took the position that the testamentary provisions of the trust were invalid.

On September 28, 1963, Mrs. Nalle executed an agreement with Nalle's niece and nephew, who were the surviving life beneficiaries of the trust. It recited that it was made "for the purpose of effectuating an adjustment and settlement of their respective interests under the [will and the trust]." Its principal provisions were (a) an agreement on the part of Mrs. Nalle "to refrain from legal action or legal contest with respect to the validity of the aforesaid trust agreement"; (b) renunciation by the niece and nephew of the bequests totaling $5,000, contained in Nalle's will; and (c) consent of the niece and the nephew to the payment of $5,000 to Nalle's servant, taxes, costs of administration, burial expenses, and certain debts from the principal of the trust. The niece and the nephew did not have authorization to make these payments from principal, and they did not assume personal liability for them. Neither the trustee nor the remaindermen signed the agreement, but later they approved it. Mrs. Nalle's subsequent administration of the estate was consistent with the terms of the will and the trust as modified by the agreement.

The trustee relies upon the document of September 28, 1963 as a complete bar to this action. Mrs. Nalle, however, contends that she is entitled to the principal

1. The district judge also held the trust was valid and that it was not revoked by Mr. Nalle's subsequent marriage or execution of a will. Because we have held that the settlement barred Mrs. Nalle's claim to the assets of the trust, we do not reach these issues. For the same reason, we do not determine whether the assets of an *inter vivos* trust should be considered intestate property within the meaning of D.C.Code Ann. § 18–212 (1961) and related statutes, which allow a surviving spouse to share in intestate property without renouncing a will.

of the trust subject to the interest of the surviving life beneficiary. Her principal arguments in support of this position are that the paper she signed in September 1963 was simply a covenant not to sue the life beneficiaries; that she did not authorize her attorneys to release the remaindermen; that she did not intend to release them and never did so; and that the consideration she received was inadequate.

■ The district judge held that the settlement was expressed by the document executed on September 28, 1963, and the actions and correspondence of the trustees, the remaindermen, Mrs. Nalle's attorneys and of Mrs. Nalle, acting individually and as executrix. This canvass of all the facts was correct, for the intent of the parties and the purpose of a release govern its construction. Panamerican Consulting Co. v. Broun, 238 Md. 438, 209 A.2d 575, 581 (1965).

■ But even if we assume, with Mrs. Nalle, that the paper alone constituted the settlement, her contention that consideration of extrinsic evidence violated the parol evidence rule is without merit. The principal evidence received by the district judge concerned transactions that took place after the paper was executed and these, of course, are not banned by the rule. Freeman v. Stanbern Constr. Co., 205 Md. 71, 106 A.2d 50, 54 (1954). This evidence, showing the construction placed on the agreement by Mrs. Nalle, was a valuable aid to interpretation. See 4 Williston, Contracts § 623 (3d ed. 1961).

■ Ambiguity of the document made evidence of the few events that occurred before its execution also admissible. The document purports to settle the interest of Mrs. Nalle and the life beneficiaries and they alone signed it. On the other hand, Mrs. Nalle unequivocally agreed to refrain from contesting the trust. Furthermore, the document called for payments from the principal

of the trust that neither Mrs. Nalle nor the life beneficiaries were empowered to make. Thus, even if the terms of the settlement were to be found in the document alone, as Mrs. Nalle contends, parol evidence would be admissible to resolve its inconsistencies, clear up its ambiguities, and show the true meaning of the writing. Eastover Stores, Inc. v. Minnix, 219 Md. 658, 150 A.2d 884, 888 (1959); 4 Williston, Contracts § 629 at 923 (3d ed. 1961). We find, therefore, no error in the district judge's consideration of extrinsic evidence.

■ The district judge found that Mrs. Nalle gave her attorneys authority to negotiate a settlement of her claim against the trust. This finding is adequately supported by the evidence. Shortly after her husband's death, Mrs. Nalle retained attorneys who had not participated either in the preparation of the will or the trust.[2] After her attorneys advised her that her prospects for breaking the trust were poor, but that a compromise was possible, she directed them to seek a compromise. Her attorneys conferred with the attorneys for the life beneficiaries and eventually the September agreement was drafted. Before Mrs. Nalle executed this document, her attorneys submitted it to the trustee with a request that it be submitted to the remaindermen for their approval. The attorneys reminded the trustee that Mrs. Nalle was considering legal action against the trust and that it would be to the advantage of the trust to settle instead of incurring the expense and risk of litigation. The trustee passed on this information to the remaindermen with the recommendation that they approve the compromise rather than litigate. All three charities adopted formal resolutions approving the settlement. In the meantime, Mrs. Nalle, on the advice of her attorneys, executed the document after it had been read to her.

The trustee then paid from the principal of the trust the items mentioned in the agreement, and Mrs. Nalle proceeded

2. Her attorney in this suit was retained much later. He did not represent her in the negotiations and settlement of her claim.

with the administration of the estate. She distributed to herself as residuary legatee about $71,000. In the summer of 1964 she filed a federal estate tax return and claimed a deduction for the full actuarial values of the gifts to the charitable organizations named remaindermen in the trust. A copy of the trust was filed with the return, and at no time did Mrs. Nalle disclose that she, and not the charities, was entitled to the principal after the death of the surviving life beneficiary.

■ ■ These facts, we believe, support the district judge's finding that Mrs. Nalle knowingly released her claim against the principal of the trust. "[W]here the effect of a written instrument * * * depends not merely on its construction and meaning, but also upon extrinsic facts and circumstances, the inferences to be drawn from it are inferences of fact and not of law, and of course are open to explanation." West v. Smith, 101 U.S. 263, 270, 25 L.Ed. 809 (1879). These findings bind us under the clearly erroneous test of Fed.R.Civ. P. 52(a). Jersey Ins. Co. of N. Y. v. Heffron, 242 F.2d 136, 139 (4th Cir. 1957). And this is so even though documentary evidence comprised much of the trustee's proof. Wright, The Doubtful Omniscience of Appellate Courts, 41 Minn.L. Rev. 751, 764 (1957). See Note, Rule 52(a): Appellate Review of Findings of Fact Based on Documentary or Undisputed Evidence, 49 Va.L.Rev. 506 (1963). In the light of Mrs. Nalle's transactions with the trustee, and in view of the validity she accorded the trust for tax purposes, we cannot hold the district judge erred in refusing to sustain her claim that the compromise she reached was simply a covenant not to sue the life beneficiaries.

Mrs. Nalle also contends that she received no consideration, or at best, inadequate consideration. The effect she says is two-fold: First, it tends to prove no compromise with the remaindermen was reached; second, it invalidates any release that was given. She asserts that the remaindermen gave up nothing because the trustee had discretion to pay all of the items mentioned in the September agreement. The trustee concedes that it had discretion to pay most of the items, but that it would not have paid the claims of Nalle's servant without the approval of the remaindermen.

■ The residuary bequest to Mrs. Nalle was increased to the extent that the trust paid obligations of the estate, and Mrs. Nalle also received $5,000 that otherwise would have been due Nalle's niece and nephew as specific legacies. While we agree with Mrs. Nalle that the consideration she received was small, we believe the district judge did not err in ruling that its paucity did not disprove the compromise or require its avoidance.

The adequacy of the consideration for the settlement cannot be measured apart from the views of the parties concerning the prospects of litigation. Mrs. Nalle was repeatedly told by her attorneys that the likelihood of breaking the trust was poor. The trustee's attorneys advised that the trust was valid, and this information was given the remaindermen. The amount of consideration, when weighed against the discouraging prospects of attacking the trust, did not require the district judge to find the settlement did not include the remaindermen.

■ Nor can we say that the release should be set aside. Generally, mere inadequacy of consideration will not avoid a contract. There must be in addition some element of bad faith or overreaching conduct on the part of the person released, or impaired capacity of the releasor. Straus v. Madden, 219 Md. 535, 150 A.2d 230, 235 (1959). Here, the release is not tainted by these inequities.

The judgment of the district court is affirmed.