**MASONITE CORPORATION, Appellee,**

v.

**NORFOLK AND WESTERN RAILWAY COMPANY, Appellant.**

**MASONITE CORPORATION, Appellant,**

v.

**NORFOLK AND WESTERN RAILWAY COMPANY, Appellee.**

Nos. 78–1061, 78–1062.

United States Court of Appeals, Fourth Circuit.

Argued Dec. 6, 1978.

Decided July 12, 1979.

Richard S. M. Emrich, III, Chicago, Ill. (Harold E. Spencer, Belnap, McCarthy, Spencer, Sweeney & Harkaway, Chicago, Ill., Leonard D. Levine, Levine & Friedman, Virginia Beach, Va., on brief), for Masonite Corp.

Gerald P. Rowe, Norfolk, Va. (Kenneth H. Lambert, Jr., Williams, Worrell, Kelly & Greer, Norfolk, Va., on brief), for Norfolk and Western Ry. Co.

Before HAYNSWORTH, Chief Judge, and BUTZNER and HALL, Circuit Judges.

BUTZNER, Circuit Judge:

Masonite Corporation appeals a judgment that denied its claim against Norfolk & Western Railway Company for damage to a shipment of plywood and granted Norfolk & Western's counterclaim for damage to railroad equipment and the cost of clearing debris from a derailment. We affirm in part, vacate in part, and remand the case for further consideration.

The damage to each party occurred because two badly packed containers of plywood shipped by Masonite on a Norfolk & Western train shifted in transit, fell from their flatcar, and derailed another car in the train. The containers were the last in a single shipment of sixteen identical boxes packed by the shipper and transported by the railroad from Norfolk, Virginia, to Cincinnati, Ohio, over a period of sixteen days. Earlier containers received in Cincinnati before the departure of the last part of the shipment, had tilted so badly during the trip that they nearly fell from their flatcar and required extraordinary handling upon arrival. Alerted to the danger in shipping other such containers, Norfolk & Western telegraphed and telephoned Masonite's agent in Norfolk to explain the problem. The railroad told the agent that improper internal bracing was allowing the plywood to shift, and it directed Masonite to send subsequent containers in the shipment to the railroad's intermodal facility at the Portlock Ramp in Chesapeake, Virginia, for a safety inspection.

Masonite failed to comply with the railroad's request and shipped the final part of the shipment in the same way it had sent the earlier part. The last containers moved from Portsmouth Marine Terminal along the Belt Line Railroad to Norfolk & Western's interchange at Portlock Yard. There they received only a routine external inspection for patent defects in loading. Thus, the boxes never passed through the railroad's intermodal station at Portlock Ramp, where personnel alerted to the bracing problem were ready to open and examine them. The district court did not determine whether railroad employees knew or should have known that the containers had not been inspected at the Ramp.

After the destruction of its plywood in the derailment, Masonite sued Norfolk & Western under the Interstate Commerce Act, 49 U.S.C. § 20(11). Masonite argued that even though the loss was due partly to its own fault, the railroad as a common carrier was strictly liable for all damages to the plywood because it knew of the defective bracing before it accepted the goods for transportation. Norfolk & Western responded that it had no duty to detect latent deficiencies in packing done by the shipper and counterclaimed against Masonite for the cost of clearing derailment debris and the damage to its railroad equipment. The railroad also contended that Masonite had settled its entire claim by accepting in satisfaction a check for the salvage value of the plywood.

The district court found that Masonite had not compromised its claim. Concluding, however, that knowledge of inadequate bracing in some containers did not make apparent to the railroad the danger in other containers, the court held that the routine external inspection of the freight discharged the railroad's duty in this case. The court therefore held Masonite liable for the accident and awarded damages to Norfolk & Western.

I

We affirm the district court's ruling that Masonite did not compromise its claim for destruction of the plywood when it accepted Norfolk & Western's check for the proceeds of the salvage sale through which the railroad had disposed of the broken boards. Accord and satisfaction is an affirmative defense; Norfolk & Western bears the burden of proving both agreement between the parties and consideration for release of the plaintiff's claim. The district court held that the railroad failed to carry its burden on either point.

The court found that the parties agreed to settle only their dispute over the salvage value of the plywood. In its original claim, Masonite sought to recover the full value of the goods. Norfolk & Western's first settlement proposal denied re-sponsibility for loss of the goods, but offered to remit the salvage proceeds which it acknowledged were due to Masonite. "Upon receipt of your authority amending your claim to $1500.00 for the salvage proceeds only," read the offer, "our draft will be issued." Masonite responded by amending its original claim to a salvage claim for $5000. Norfolk & Western then denied that it had mishandled the salvage and rejected Masonite's claim. In reply, Masonite finally amended its original claim "to $1500.00 for the full salvage value of the board." Although the correspondence can bear different interpretations, the only trial testimony on this issue came from a Masonite employee and supported Masonite's interpretation of the letters. Norfolk & Western presented no testimony to carry its burden of proving that the parties intended by their correspondence to compromise Masonite's claim for loss of the plywood. Furthermore, the railroad did not show that it secured a general release of the claim for damage to the goods. Therefore, we conclude that the district court's finding on the parties' intentions is not clearly erroneous.

The court also held that Norfolk & Western gave no consideration to support an accord and satisfaction on Masonite's claim for loss of the plywood. An analysis of the transaction reveals the soundness of this conclusion.

Norfolk & Western acknowledged at all times that Masonite was entitled to the full proceeds of the salvage sale. Masonite, on the other hand, presented a salvage claim greater than the amount of the sale proceeds. Thus, Norfolk & Western's payment of the conceded part of the salvage was good consideration for an accord and satisfaction on Masonite's unliquidated salvage claim. See 6 Corbin on Contracts § 1289 (1962).

Payment of salvage, however, was not consideration for release of Masonite's distinct claim for the value of the plywood. Norfolk & Western sold the broken boards for Masonite's account. The railroad asserted no right to the salvage by way of

set-off or otherwise. In paying over the salvage, therefore, Norfolk & Western gave Masonite nothing that the railroad was not already obliged to pay. *See Topas v. John MacGregor Grant, Inc.*, 18 F.2d 724, 725 (2d Cir. 1927). Stripped to its bare essentials, Norfolk & Western's argument is based on the premise that, as a matter of law, a common carrier can withhold salvage admittedly due to a shipper until the shipper surrenders its claim for damage to its goods. Norfolk & Western cites no authority for this proposition, and we decline to fashion such a rule. Consequently, we agree with the district court that the railroad gave no consideration to support a settlement of Masonite's claim for damages.

## II

We cannot decide on the record now before us which party is liable. We believe, however, that Norfolk & Western was on notice that the last containers in Masonite's shipment were likely to be as badly braced as the previous ones. We hold, therefore, that Norfolk & Western is liable to Masonite unless the railroad can show that it took reasonable steps to prevent the dangerous freight from moving on its train.

The principles of common carrier liability applicable to this case are well settled. Section 20(11) of the Interstate Commerce Act, 49 U.S.C. § 20(11), codifies the common law rule that a carrier is liable for all damage sustained by goods in transit unless it can prove that the loss was due entirely to an excepted cause, such as an act of the shipper. When the shipper shows that goods were damaged, the carrier has the burden of proving both that the damage was attributable to an excepted cause and that the carrier was free from negligence. *Missouri Pacific Railroad Co. v. Elmore & Stahl*, 377 U.S. 134, 137–38, 84 S.Ct. 1142, 12 L.Ed.2d 194 (1964). Thus, in order to avoid liability, Norfolk & Western must prove more than faulty packing by Masonite; the railroad also must prove that its failure to prevent the loss of the goods was not negligent. Since the railroad has a right to refuse transportation to badly packed goods, the railroad is liable despite the shipper's fault when it negligently fails to reject goods that may suffer damage because of deficiencies in packing. *See Hannibal & St. Joseph Railroad Co. v. Swift*, 79 U.S. (12 Wall.) 262, 270–73, 20 L.Ed. 423 (1871). The railroad is not obliged to inspect all freight containers for internal defects, but it is liable for damage caused by defects in packing reasonably known or discoverable by the railroad. *See United States v. Savage Truck Line*, 209 F.2d 442, 445 (4th Cir. 1953).

After earlier containers in Masonite's shipment tilted dangerously during the trip to Cincinnati, Norfolk & Western suspected that the last containers were packed inadequately. For that very reason, the railroad asked Masonite to submit the remainder of the shipment for a pre-transit inspection at Portlock Ramp. Thus, although the defects in internal bracing that led to the accident were not apparent from an ordinary external inspection, they were reasonably known to Norfolk & Western. Had Masonite not failed to deliver the containers for inspection at Portlock Ramp, Norfolk & Western clearly would be liable for the damage to Masonite's shipment. *See United States v. Savage Truck Line*, 209 F.2d 442, 445 (4th Cir. 1953).

Masonite's failure to comply with Norfolk & Western's instructions does not necessarily absolve the railroad of liability for damage to the goods. Although the damage was caused in part by the shipper's fault, the railroad is liable for the loss unless it can prove that its acceptance of the defective containers was not negligent. *See Missouri Pacific Railroad Co. v. Elmore & Stahl*, 377 U.S. 134, 138, 84 S.Ct. 1142, 12 L.Ed.2d 194 (1964).

We therefore vacate the district court's judgment on liability and remand the case so that the court can determine whether the railroad was negligent. On remand, the court should consider whether Norfolk & Western took reasonable measures for discovering Masonite's failure to comply with the delivery instructions. After directing Masonite to deliver the containers to the Ramp for inspection, Norfolk & Western could not with impunity accept the uninspected freight at the Yard if its

employees knew or, in the exercise of reasonable care, should have known that the containers had not been inspected.

Accordingly, the judgment of the district court is affirmed in part and vacated in part, and the case is remanded with directions to make further findings of fact and conclusions of law. If the district court rules that Norfolk & Western was not negligent, the court should reinstate its judgment. Otherwise, the court should enter judgment for Masonite on the claim and the counterclaim. Each party shall bear its own costs.

*Affirmed in part; Vacated in part; Remanded with directions.*

K. K. HALL, Circuit Judge, concurring in part and dissenting in part:

I concur in Part II of the majority opinion regarding the duties of a railroad as common carrier under § 20(11) of the Interstate Commerce Act, 49 U.S.C. § 20(11). However, I think the majority has improperly considered the accord and satisfaction issue in Part I. The parties intended that the railroad's payment of salvage proceeds would be an accord and satisfaction for Masonite's aggregated claims, liquidated and unliquidated. Masonite should be bound to its bargain, and accordingly, I respectfully dissent.

I.

The documents at issue show that an accord and satisfaction of all Masonite's claims was reached by the parties.

On November 1, 1973, Masonite filed a claim with the railroad alleging that N&W owed it $6,786.08, the full value of its goods which had not been delivered in good condition. On August 1, 1975 N&W refused to pay any amount on this claim, even salvage sale proceeds of $1500.00, until Masonite conceded that N&W was not liable for damage to the improperly packed goods. This was N&W's position throughout the parties' correspondence.

On August 15, 1975, Masonite proposed a counteroffer in threatening terms. It alluded to other damages which would increase its claimed losses to $20,000. It as-

serted that N&W had mishandled the salvage sale and should have realized $5,000 instead of $1,500. Masonite concluded by proposing "*a full settlement of this claim for $5,000.00*" (emphasis added) and made a clear threat to litigate "to assure full and fair restitution to Masonite Corporation."

N&W would not relent and Masonite wrote another letter on January 15, 1976, referring to N&W's letter of August 1, 1975. Significantly, Masonite did not refer to its earlier letter containing the counteroffer. It wrote: "We would like to amend our claim dated November 1, 1973, for $6,786.08, and adjust it to the $1,500.00 for the full salvage value of the board. Upon receipt of your check of $1,500.00, *we will close our claim* against Norfolk & Western." (Emphasis added)

These documents clearly evidence an intent on Masonite's part to accord and satisfy all of its claims against N&W. In reaching a different conclusion, the majority refers to conclusory testimony by a Masonite employee who stated in response to three cursory questions, that Masonite's total claims were for $6,786.08, and some $5,200 was still due and owing. Of course, resort to extrinsic evidence is improper when documents are unambiguous. Their clear meaning should be given effect. *See Chenango Bridge Co. v. Binghamton Bridge Co.*, 3 Wall. (U.S.) 51, 18 L.Ed. 137 (1866). Compounding its error, the majority cites the "clearly erroneous" standard of Fed.R. Civ.P. 52(a) in affirming the district court's judgment against N&W on this issue. The parties did not present extrinsic evidence and the district court did not rely on or even refer to any extrinsic evidence in construing the documents. The "clearly erroneous" rule does not apply where we review the lower court's legal interpretation of documents. Our view of these documents is as good as the district court's view. *See Nalle v. First National Bank of Baltimore*, 412 F.2d 881, 884 (4th Cir. 1969).

In my view, the district court's interpretation of the documents is contrary to the clear language therein. I would reverse and hold as a matter of law that the documents show, with no ambiguity, an accord and satisfaction of all Masonite's claims.

## II.

The majority holds that, even if the parties intended to reach an accord and satisfaction of Masonite's claims, they can not be bound to the bargain because no consideration supports it. This is simply not the law.

> [T]he cases are many in which it has been held that where an aggregate amount is in dispute, the payment of a specified sum conceded to be due, that is, by including certain items but excluding disputed items, on condition that the sum so paid shall be received in full satisfaction, will be sustained as an extinguishment of the whole.

*Chicago M. & St. P. R. Co. v. Clark*, 178 U.S. 353, 367, 20 S.Ct. 924, 929, 44 L.Ed. 1099 (1900) (collecting cases).

Masonite elected to negotiate for an aggregate sum to be paid upon the railroad's concession of liability. The railroad refused to make payment, and Masonite threatened to litigate the matter unless negotiations produced a satisfactory settlement. The railroad made payment, as a settlement of the aggregate claim, and Masonite accepted that payment. This business bargain should be enforced.

> The general principle applicable to settlements [is]: . . . the largest number of controversies between business men are ultimately settled by the parties themselves; and when there is no unfairness, and all the facts are equally known to both sides, an adjustment by them is final and conclusive. Oftentimes a party may be willing to yield something for the sake of a settlement; and if he does so with a full knowledge of the circumstances, he cannot affirm the settlement, and afterwards maintain a suit for that which he voluntarily surrendered.

*Id.* at 369, 20 S.Ct. at 930 (citations omitted).

The harshness to which the majority alludes does not exist. Enforcement of the accord and satisfaction will not allow common carriers to invariably bully shippers into settling distinct liability claims in return for immediate payment of salvage sale proceeds. Here, the shipper initiated the bargain by choosing to negotiate for a single immediate payment in settlement of all its claims, as an alternative to litigation. The payment N&W agreed to make may have been less than Masonite hoped to obtain, but the fact remains that Masonite accepted the proffered payment in settlement of its whole claim.

## III.

Accordingly, I would reverse the district court on both of its alternative holdings that the parties did not reach accord and satisfaction of Masonite's liability claim and that, if such agreement was reached, it was not supported by consideration. I respectfully dissent from the majority's opinion in Part I, but concur in Part II.