UNPUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

THE BURLINGTON INSURANCE
COMPANY; FIRST FINANCIAL
INSURANCE COMPANY; BURLINGTON
INSURANCE GROUP, INCORPORATED,

*Plaintiffs-Appellees,*

v.

TRYGG-HANSA INSURANCE COMPANY
AB,

*Defendant-Appellant.*

No. 00-1373

Appeal from the United States District Court
for the Middle District of North Carolina, at Durham.
William L. Osteen, District Judge.
(CA-99-334-1)

Argued: January 23, 2001

Decided: May 23, 2001

Before WILKINSON, Chief Judge, and WILKINS and
KING, Circuit Judges.

---

Vacated and remanded by unpublished per curiam opinion.

---

## COUNSEL

**ARGUED:** Andrew S. Amer, SIMPSON, THACHER & BART-
LETT, New York, New York, for Appellant. Louis M. Solomon,
SOLOMON, ZAUDERER, ELLENHORN, FRISCHER & SHARP,

New York, New York, for Appellees. **ON BRIEF:** Sasha A. Smith, SIMPSON, THACHER & BARTLETT, New York, New York; Josiah S. Murray, III, John R. Long, NEWSOM, GRAHAM, HED-RICK & KENNON, P.A., Durham, North Carolina, for Appellant. Margaret A. Dale, SOLOMON, ZAUDERER, ELLENHORN, FRIS-CHER & SHARP, New York, New York; Catharine B. Arrowood, Brian D. Darer, PARKER, POE, ADAMS & BERNSTEIN, L.L.P., Raleigh, North Carolina, for Appellees.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

PER CURIAM:

This appeal, from the Middle District of North Carolina, arises from a lawsuit filed by Burlington Insurance Company ("Burlington Insurance"), First Financial Insurance Company ("First Financial"), and Burlington Insurance Group, Inc. ("Burlington Group") (collectively, "Plaintiffs"), against Trygg-Hansa Insurance Company AB ("Trygg"). The Complaint alleges several claims for, inter alia, breach of contract and deceptive trade practices, stemming from reinsurance contracts entered into by Trygg and the Plaintiffs.

Trygg moved to stay the litigation proceedings in the district court pending arbitration. The district court granted Trygg's motion in part, but it refused to stay two claims for relief made in the Complaint. Trygg has appealed the district court's ruling pursuant to 9 U.S.C. § 16(a)(1)(A) (authorizing interlocutory appeals to review denials of motions to stay proceedings pending arbitration). For the reasons explained below, we find arbitration warranted with respect to all claims made in the Complaint. Accordingly, we vacate the district court's order and remand for entry of an appropriate stay.

I.

A.

Trygg is a Swedish insurance company that approximately ten years ago decided to enter the United States reinsurance market. To accomplish this end, it signed a January 14, 1991 Memorandum of Agreement ("MOA") with Burlington Group. Pursuant to the terms of the MOA, Trygg advanced $6 million to Burlington Group in exchange for a non-negotiable promissory note of that same sum. Burlington Group is not itself an insurance company, but is a parent company indirectly holding controlling equity in both Burlington Insurance and First Financial.

In October of 1991, Trygg entered into two reinsurance agreements, one with Burlington Insurance and one with First Financial, each effective January 1, 1991 ("the Reinsurance Agreements"). The Reinsurance Agreements contain identical arbitration provisions:

> As a condition precedent to any right of action hereunder, any dispute arising out of this Agreement shall be submitted to the decision of a board of arbitration . . . .

J.A. 56, 83.

For reasons in dispute but immaterial to the resolution of this appeal, Trygg decided in 1993 to withdraw from the reinsurance market in the United States. Pursuant to the terms of the Reinsurance Agreements, Trygg gave written notice, effective January 1, 1994, of their termination. Trygg, for reasons also in dispute, consented, on December 29, 1993, to terminate the MOA and forgive one-half of the $6 million loan it had made to Burlington Group. Then, on April 8, 1994, Trygg signed a Reconfirmation of Agreement ("ROA") with Burlington Group, First Financial, and Burlington Insurance. The ROA memorializes the December 29, 1993 understanding and releases Trygg from liability for all insurance policies issued after December 31, 1994, but reiterates that all other provisions of the Reinsurance Agreements remain in effect.

Under disputed circumstances, Trygg ceased paying its share of losses due under the Reinsurance Agreements. To cover the insurance claims, Burlington Insurance and First Financial drew on the letters of credit posted by Trygg under the Reinsurance Agreements. Both insurers then asked Trygg to increase its letters of credit to secure future losses, but Trygg declined to meet those demands, alleging that it had been misled into forgiving one-half of the loan due under the MOA.[1]

B.

Burlington Insurance and First Financial, on April 8, 1999 (exactly five years after the ROA was signed), formally demanded arbitration under the Reinsurance Agreements, demanding money damages for unpaid claims and asking Trygg to increase its letters of credit. On the same day, Burlington Insurance, First Financial, and Burlington Group filed a civil action in the Superior Court of North Carolina, seeking recompense from Trygg for: (1) breach of contract and consequential damages; (2) consequential damages for the violation of the duties of good faith and fair dealing; (3) treble damages, attorneys' fees, and costs under North Carolina's deceptive trade practices law; (4) punitive damages in excess of $10 million; (5) pre-answer security of $2,659,291 pursuant to North Carolina's insurance code; and (6) a declaration that the ROA is valid and enforceable.

---

[1]The parties vigorously dispute each other's version of events, but a determination of the factual disputes is unnecessary to our resolution of this appeal. Put succinctly, Trygg asserts that it agreed to forgive one-half of the loan because the reinsurance business had apparently been profitable. Trygg further contends, however, that in reality Burlington Insurance and First Financial were concealing mounting claims under the insurance contracts that Trygg was obligated to reinsure. Thus, according to Trygg, Burlington Insurance and First Financial fraudulently lulled Trygg into thinking it had achieved satisfactory profits, convincing Trygg to forgive one-half of the loan. Burlington Insurance and First Financial dispute both the allegation that they fraudulently concealed claims and the allegation that the forgiveness of the $3 million was conditioned solely on Trygg's understanding of the profits it had achieved during its relationship with the Plaintiffs.

On April 23, 1999, Trygg removed the civil action to the Middle District of North Carolina, on the basis of diversity of citizenship. Then, on May 17, 1999, Trygg filed a Motion for Stay Pending Arbitration, pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 ("FAA"), maintaining that the entire civil action was subject to arbitration, pursuant to the Reinsurance Agreements. The district court, by its Memorandum Opinion of March 17, 2000 ("Memorandum Opinion"), granted Trygg's motion in part, and ordered a stay of the litigation except to the extent that the plaintiffs were seeking (1) a declaration that the ROA was valid; and (2) extra-contractual damages, i.e., damages under the theory that Trygg's breaches "limited Plaintiffs' ability to underwrite new business and caused Plaintiffs to accrue financial penalties or that Trygg-Hansa engaged in a continuing course of wrongful conduct[.]" Memorandum Opinion, at 8. The district court then stayed the trial of *all* claims, but directed the parties to proceed with discovery on the claims and issues unaffected by the stay. Trygg filed a timely notice of appeal, repeating its contention that both discovery and trial must be stayed for *all* claims until arbitration is completed.[2]

## II.

Under the FAA, a court must stay "any suit or proceeding" pending arbitration of "any issue referable to arbitration under an agreement in writing for such arbitration." 9 U.S.C. § 3. Because ascertaining the scope of an arbitration agreement is a task of contract interpretation, we review de novo a district court's determination of the arbitrability of a dispute. *See United States v. Bankers Ins. Co.*, 245 F.3d 315, 319 (4th Cir. 2001). At the same time, we give due regard to the federal policy favoring arbitration and resolve "any doubts concerning the scope of arbitrable issues . . . in favor of arbitration[.]" *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

---

[2]On May 23, 2000, the district court denied Trygg's motion for a stay pending appeal. Trygg then filed a stay request with this Court, on June 2, 2000, which we denied on June 27, 2000.

III.

A.

At the outset, we note that the Plaintiffs have belabored the point that the district court did not "compel" arbitration under 9 U.S.C. § 4, but instead merely "stayed" the proceedings under 9 U.S.C. § 3. Plaintiffs claim — in contravention of 9 U.S.C. § 16 (authorizing interlocutory appeals of a district court's denial to stay "any action under section 3") — that there is no appellate jurisdiction in this case, since Burlington Group is not a party to any ongoing arbitration and has not signed an agreement containing an arbitration clause. Plaintiffs, however, appear to misapprehend the purposes of the FAA, 9 U.S.C. § 16, and the district court's "stay." A stay simply means that the litigation in the district court — of which Burlington Group is a party — must be stayed until the disputes in the case undergo arbitration. Whether Burlington Group is also a party to ongoing arbitration that is conducted simultaneous with the pending litigation is irrelevant. Similarly, Burlington Group's assertion that it is not subject to any arbitration clause entered into by the other parties is irrelevant for the purposes of determining our jurisdiction. Burlington Group is a party-plaintiff in the litigation as filed in the state court and as removed to the district court. That litigation is the subject of this appeal, not the contemporaneous arbitration among First Financial, Burlington Insurance and Trygg.[3]

We see Plaintiffs' attempt to insert a red herring into these proceedings — questioning our abundantly clear jurisdiction, as well as the significance of a stay under § 3 versus compelled arbitration under § 4 — as based on conclusory[4] and flawed reasoning.[5] *See also Shan-*

---

[3]The issue of whether Burlington Group is bound by the arbitration clauses is appropriately raised in determining the merits of the motion for stay pending arbitration, and we address Plaintiffs' assertions on this issue *supra*, at Part III.B.2.b.

[4]Plaintiffs' argument is conclusory because it is based on the erroneous assumption that Burlington Group is not bound by any arbitration clause. Even if this were true (and we have determined otherwise, *see supra* Part III.B.2.b.), such a finding would not affect our jurisdiction to decide

*feroke Coal & Supply Co. v. Westchester Serv. Corp.*, 293 U.S. 449, 453 (1935) ("[T]here is no reason to imply that the power to grant a stay is conditioned upon the existence of power to compel arbitration in accordance with section 4 of the act.").

## B.

We now turn to the core issues in this case. In that connection, Plaintiffs stress that the district court correctly determined that the arbitration clauses in question were "narrow,"[6] and do not encompass the claims the district court declined to stay. Furthermore, Plaintiffs assert that the arbitration clauses only cover the Reinsurance Agreements (since only those agreements contain such clauses) and the disputes arising therefrom, and in no event pertain to any lawsuit maintained by Burlington Group, since it was not a party to the Reinsurance Agreements.

On the other hand, Trygg contends that all disputes in this case emanate from the Reinsurance Agreements, and that the arbitration clauses set forth therein were reaffirmed by the ROA. Furthermore, it challenges Plaintiffs' assertion that Burlington Group's claims are

---

whether a stay under § 3 should be granted. *See* note 3 and accompanying text.

[5]Trygg, having filed no claims of its own, has little use for § 4. However, once the lawsuit was filed against Trygg, it enforced its right to have the dispute settled by arbitration. "[S]ection 4, by its very terms, refers only to situations in which a party aggrieved by another's failure to honor an arbitration agreement initiates an independent proceeding to compel arbitration . . . . When . . . a party seeks a stay pending arbitration in the context of an ongoing lawsuit, that party is seeking relief pursuant to section 3." *McDonnell Douglas Fin. Corp. v. Penn. Power & Light Co.*, 849 F.2d 761, 763 n.1 (2d Cir. 1988).

[6]There are two types of arbitration clauses — broad and narrow. *See, e.g.*, *American Recovery Corp. v. Computerized Thermal Imaging, Inc.*, 96 F.3d 88, 92-93 (4th Cir. 1996) (explaining the significance of broad versus narrow arbitration clauses). We later discuss the scope of the arbitration clauses in the instant case, as well as the significance of that determination. *See supra* Part III.B.1.

not subject to an arbitration agreement. Trygg insists that Burlington Group's status as the parent company of Burlington Insurance and First Financial, along with its decision to pursue related and inseparable claims to Burlington Insurance and First Financial, makes it subject to the arbitration clauses found in the Reinsurance Agreements.

1.

The arbitration clauses in question each provide that "any dispute arising out of this Agreement shall be submitted to [arbitration.]" The district court, in construing this language, concluded that the agreement to arbitrate "claims arising out of the agreement" was "an example of a narrow arbitration clause." Memorandum Opinion, at 6. The Plaintiffs urge that the district court's approach was correct, relying on the language "arising out of this Agreement" as evidence that the arbitration clauses only cover disputes based explicitly on the contract, not "all and any disputes" between the parties. Appellees' Br., at 20 (citations omitted).

Coincidentally, just three days prior to the district court's decision, we decided certain arbitration issues in *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411 (4th Cir. 2000). In that case, the arbitration provision was nearly identical to those involved here, providing that "[a]ny dispute arising out of the Contract" was to be submitted to arbitration. *Int'l Paper Co.*, 206 F.3d at 416 n.3. In our decision, we specifically noted that the arbitration clause involved there was "a broad one[.]" *Id.* In any event, a conclusion that the arbitration clauses in this case are "broad" is not a necessary component of our decision that the arbitration clauses cover all counts of the Complaint. The claim for extra-contractual damages, as to which the district court specifically refused a stay, clearly "arises" from the contract.

Indeed, the alternate contention — that the Plaintiffs' extra-contractual claims do not "arise" from the Reinsurance Agreements, and are thus not subject to the arbitration clauses — is without merit. The district court, however, found that the claim that "Trygg's-Hansa's failure to meet its contractual obligations damaged plaintiffs in ways beyond the scope of the contract . . . do[es] not concern

Trygg-Hansa's performance of contractual obligations." Memorandum Opinion, at 8.

We find ourselves in disagreement with the district court on this point. Any claim dependent on a "failure to meet [ ] contractual obligations" must *necessarily* concern and depend on what those contractual obligations are, and to what extent they have been performed by the party alleged to have breached them. It is clear that Trygg owed no duty (relevant for the resolution of this litigation) to the Plaintiffs except those arising from the existence of the Reinsurance Agreements and the related contracts. Although the damages claimed by Plaintiffs go beyond ordinary contractual damages, they clearly arise from the original contract itself, inasmuch as they are premised on Trygg's alleged failure to comply with its contractual duties. Thus, the claims for extra-contractual damages must be submitted to arbitration as required in the Reinsurance Agreements.

2.

Having concluded that the arbitration clauses at issue encompass all claims for damages that resulted from Trygg's alleged breaches, two questions remain. First, we must determine whether the Plaintiffs' claim for declaratory relief — that the ROA is valid and enforceable — must be submitted to arbitration, notwithstanding the fact that the ROA itself does not contain an arbitration clause. Second, we must ascertain the significance, if any, of Burlington Group not being a party to the Reinsurance Agreements, and of the fact that Burlington Group "never signed an arbitration agreement with Trygg[.]" Appellees' Br., at 13.

a.

In evaluating whether the ROA contains a commitment to arbitrate disputes arising from it, we look first at its plain language. *See, e.g.*, *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 56-57 (1995). While the ROA does not specifically contain an arbitration provision, it explicitly provides that "all other provisions of such reinsurance agreements remain in full force and effect[.]" Indeed, the ROA is a *reconfirmation* of the MOA and the Reinsurance Agreements, not a substitution thereof. By its terms, the ROA includes all

provisions of the Reinsurance Agreements, including the arbitration clauses, that are not changed by the ROA. Thus, it is clear that the ROA includes and is subject to the arbitration clauses included in the Reinsurance Agreements.

b.

Lastly, we turn to the significance of Burlington Group's failure to specifically and directly enter into an arbitration agreement with Trygg.[7] We first note that Burlington Group is only included as a plaintiff in the Complaint's sixth claim for relief, which seeks a declaration that the ROA is valid and enforceable. The ROA essentially contains three parts. Part one (Paragraphs 1 and 2) addresses the termination of the MOA and the corresponding loan between Burlington Group and Trygg. Part two (Paragraph 3) addresses the Reinsurance Agreements. In consideration for cancellation of the MOA and loan thereunder (Paragraphs 1 and 2), and various changes (and non-changes) to the Reinsurance Agreements (Paragraph 3), Burlington Group executed a new $3 million note to Trygg (Paragraph 4). Of importance, all of the allegations in the Complaint pertaining to Trygg's failure to comply with its contractual duties mention only the duties originally created by the Reinsurance Agreements, duties as such Trygg owed to Burlington Insurance and First Financial.[8]

In short, although Burlington Group is a party to the ROA, the sole allegation of a breach of duty to Burlington Group is that Trygg failed to honor the Reinsurance Agreements, to which Burlington Group was not a party, and that Trygg's recommitment to honor the Reinsurance Agreements was part of the consideration for Burlington Group's execution of the new $3 million note in the ROA.[9] Thus, the

[7]Although Burlington Group was a party to the ROA, which contains an arbitration clause, *see supra* Part III.B.2.a., that clause only applies to the Reinsurance Agreements, to which Burlington Group was not a party.

[8]Indeed, in the part of the Complaint where the factual predicate of the litigation and Trygg's breaches are alleged, J.A. 127-33, Burlington Group is not mentioned.

[9]Of course, Burlington Group received a one-half reduction in the amount it owed to Trygg, since the ROA cancelled the $6 million note

success of Burlington Group's lawsuit is entirely dependent on and inseparable from the claim of Burlington Insurance and First Financial that Trygg breached its duty under the ROA and Reinsurance Agreements.

Under our precedents, there are two compelling reasons why Burlington Group must be bound to the arbitration clauses, even though it was not a party to the Reinsurance Agreements. First, "[w]hen the charges against a parent company and its subsidiary are based on the same facts and are inherently inseparable, a court may refer claims against the parent to arbitration even though the parent is not formally a party to the arbitration agreement." *J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A.*, 863 F.2d 315, 320-21 (4th Cir. 1988). The scenario discussed in *J.J. Ryan & Sons* is sufficiently analogous to the situation that exists in this case and, because the exact issues to be determined here were pre-committed to arbitration, it would violate the intent of the parties and the purpose of the FAA to not hold Burlington Group to the arbitration clauses.

---

and substituted a $3 million note. Furthermore, although not discussed by the parties, we point out that Trygg's agreement to reconfirm its duties under the Reinsurance Agreements could not properly be consideration (and therefore could not be the basis for a breach of contract suit) for Burlington Group's execution of a new $3 million note. *See, e.g.*, *Contempo Design, Inc. v. Chicago & Northeast Illinois Dist. Council of Carpenters*, 226 F.3d 535, 549 (7th Cir. 2000) ("[P]romising to perform a duty that already is owed under an existing contract is not consideration[.]"); *Masonite Corp. v. Norfolk & W. Ry. Co.*, 601 F.2d 724, 727-28 (4th Cir. 1979) (restating the well-established rule that performing a pre-existing contractual duty cannot be consideration for a new agreement with the same party); *Alaska Packers' Ass'n v. Domenico*, 117 F. 99, 104 (9th Cir. 1902) ("A promise by a party to do what he is bound in law to do is . . . the same as no consideration at all[.]") (citing *Cobb v. Cowdery*, 40 Vt. 25 (1867)). The fact that both parties also offered new and additional consideration sufficient to bind the ROA is irrelevant to whether Trygg's promise to perform under the Reinsurance Agreements was an independent component of Trygg's consideration for the ROA, since Trygg was never free to breach the Reinsurance Agreements. *See, e.g.*, 1 E. Allan Farnsworth, Farnsworth on Contracts § 4.21, at 501 (2d ed. 1998).

Another solid reason binding Burlington Group to the arbitration clauses is that the clauses are a part of the contracts that Burlington Group seeks to enforce, i.e., the Reinsurance Agreements. Although the claim for declaratory relief centers around the ROA, it is the duties under the Reinsurance Agreements which are at issue in this case, and which the ROA merely reaffirms. Since the arbitration clauses in the Reinsurance Agreements remained in full force after the ROA, *see supra* Part III.B.2.a., Burlington Group cannot sue to enforce the ROA while at the same time seeking to avoid the arbitration clauses. Indeed, this Court has repeatedly explained that "no party suing on a contract should be able to enforce certain contract provisions while simultaneously attempting to avoid the terms of an arbitration provision contained therein." *Bankers Ins. Co.*, 245 F.3d at 323. *See also Long v. Silver*, No. 00-1612, 2001 WL 432483, at *8 (4th Cir. Apr. 27, 2001); *Int'l Paper Co.*, 206 F.3d at 418. Burlington Group, however, seeks to do exactly what we have proscribed in the above cases. The principle that a party may not pick and choose the contract provisions that it seeks to enforce is an important one that is founded on equity, *see Int'l Paper Co.*, 206 F.3d at 418, and we have no reason to ignore that principle in this case. When, as here, a party sues on a contract, "any arbitration provision contained therein remains in force." *Bankers Ins. Co.*, 245 F.3d at 323.

IV.

For these reasons, we must vacate the district court's decision to deny a stay of arbitration on the Plaintiffs' claims for extra-contractual damages and declaratory judgment on the ROA. We remand this case to the district court with directions that a stay be entered, pending arbitration on all counts of the Complaint.[10]

*VACATED AND REMANDED WITH DIRECTIONS*

---

[10]On April 26, 2001, we were notified by counsel for the Plaintiffs that the related arbitration among Burlington Insurance, First Financial, and Trygg has been completed. No party, however, has filed a motion to dismiss this appeal as moot. In any event, the effect of our decision today — with particular respect to those claims yet outstanding — is a matter for the district court in the first instance.