**UNITED STATES**
v.
**SAVAGE TRUCK LINE, Inc. et al.**
(four cases).
Nos. 6648–6651.

United States Court of Appeals,
Fourth Circuit.
Argued Oct. 22, 1953.
Decided Dec. 21, 1953.

Cornelius J. Peck, Atty., Department of Justice, Washington D. C. (Warren E. Burger, Asst. Atty. Gen., L. S. Parsons, Jr., U. S. Atty., James R. Moore, Asst. U. S. Atty., and Samuel D. Slade, Atty., Department of Justice, Washington D. C., on the brief), for United States.

F. Elmore Butler, Richmond, Va. (John S. Davenport, III, and Denny, Val-entine & Davenport, Richmond, Va., on the brief), for Savage Truck Line, Inc.

James M. Minor, John G. May, Jr., and Ernest G. Garrett, Jr., Richmond, Va., on the brief for Frances E. Harris, Executrix.

Before PARKER, Chief Judge, SOPER, Circuit Judge, and WILKIN, District Judge.

SOPER, Circuit Judge.

These suits grow out of a collision on a four-lane highway of U. S. Route 1 in Hanover County, Virginia, at about 5 A.M. in the morning of March 29, 1951 between a truck owned by Brooks Transportation Company, Inc. and driven by Bernard R. Harris, its employee, and a truck owned by Savage Truck Line, Inc. and driven by its employee Z. F. Payne.

Savage was a common carrier and as such was engaged under a contract with the United States in transporting in its truck from Norfolk, Virginia, to Quonset Point, Rhode Island, a cargo of six airplane engines encased in cylindrical containers. Immediately before the accident the truck was proceeding northwardly in its right hand northbound lane of the highway and was rounding a curve from southeast to northeast when one or more of the cylinders shifted to the left causing the vehicle to cross over the double center line into the southbound passing lane. At this moment the Brooks truck was proceeding southerly in its right hand southbound lane and as the two trucks passed one another, one of the cylinders fell off the Savage truck upon the Brooks truck and killed its driver instantly.

The cylinders weighed 5,000 pounds each. They were 5' 5" in diameter; and five of them were 9' 3" and one of them 7' 7" in height. They were loaded upon the trucks by agents of the United States and placed in an upright position extending above the 7' sides of the uncovered vehicle. They were fastened to the floor of the truck but not sufficiently to stand the strain as the truck sped around the bend in the road, and consequently

they came loose causing the truck to swerve across the road, and one of them crashed through the left rear end of the truck and came into collision with the passing vehicle and its driver. The Savage truck continued across the road and turned over on its right side while the Brooks truck turned over on its right side, both on the western shoulder of the highway.

Four separate suits were filed against Savage and the United States. Frances E. Harris, executrix of the deceased driver of the Brooks truck, sued Savage and the United States in separate suits for damages for his death. Brooks filed separate suits, one against Savage and one against the United States for damages to its truck. The United States, as defendant in two of the suits, filed a third party complaint against Savage seeking recovery for the damage to the engines and also indemnity for any liability that might be established against the United States in favor of the primary plaintiffs. Savage, as defendant in two of the suits, filed a third party complaint against the United States claiming indemnity for any liability that might be established against it in favor of the primary plaintiffs. Savage also filed a counterclaim for damages to its truck in the third party proceeding instituted by the United States in the suit of Brooks v. United States.

The four cases were consolidated for trial; and simultaneously the two suits against Savage were tried before a jury, while the two suits against the United States under the Federal Tort Claims Act, 28 U.S.C.A. §§ 1346, 2671 et seq., were tried before the District Judge. The jury found a verdict against Savage for $15,000 in favor of the executrix for the death of Harris, and a verdict for $5844.83 in favor of Brooks for the stipulated damages to the truck. The judge held that the agents of the United States were guilty of negligence in failing to fasten the cylinders securely upon the truck, and that Savage was guilty of negligence in accepting the cargo for transportation and in operating the truck with knowledge of this condition. Accordingly he entered judgment against the United States in favor of the primary plaintiffs in the same amounts as were found by the jury in the cases against Savage.

The judge further held that if either the United States or Savage paid the judgments against it in favor of the primary plaintiffs, it was entitled to contribution from the other; but that the United States was not entitled to recover from Savage under its third party complaint for damages to the cylinders, and that Savage was not entitled to recover from the United States under its counterclaim for damages to its truck. By these holdings the judge also denied the claim of the United States against Savage and the claim of Savage against the United States for indemnity.

On this appeal the United States does not challenge the judgments against it in favor of the primary plaintiffs, but agrees that the adverse findings of the judge cannot be said to be clearly erroneous. It does claim, despite the finding of negligence on its part in loading the truck, (1) that it is entitled to recover from Savage the damages to the engines because of the liability of a common carrier to a shipper; and (2) that it is entitled to indemnity for its liability to the primary plaintiffs, because the driver of the Savage truck knew of the unsafe condition of the cargo, and because it was within his power to avert the accident by driving with the care required by the circumstances.

Savage does not challenge its liability to the primary plaintiffs, but denies any liability to the United States for damages to its engines or for indemnity against the claims of the primary plaintiffs; and Savage has filed a cross-appeal in which it claims the right to recover from the United States for the damages to its truck, because of the negligence of the United States in loading the engines thereon.

The decision of the questions raised by these appeals as to the respective liabilities of the United States and of

Savage for the damages occasioned by each to the property of the other turns on the rights and liabilities inherent in the carrier-shipper relationship between them in the interstate transaction upon which they were engaged. These rights and liabilities are fixed by the Acts of Congress, the terms of the contract contained in the bill of lading, and the rules of the common law which are recognized by the federal courts. The bill of lading in this case throws no added light on the issue since it declared that it was issued subject to the rules and conditions which govern commercial shipments generally. The common law liability of a common carrier is that of an insurer for loss or damage of goods in transit with certain well defined exceptions. The federal statutes and decisions are in accord. It is provided by 49 U.S.C.A. § 20(11) which is made applicable to carriers by motor vehicle by 49 U.S.C.A. § 319 that common carriers shall issue a bill of lading for property received for transportation in interstate commerce and shall be liable to the holder for any loss, damage or injury to the property caused by the carrier; and that no contract shall exempt the carrier from the liability imposed. See Cincinnati N. O. & Tex. Pac. Ry. v. Rankin, 241 U.S. 319, 326–327, 36 S.Ct. 555, 60 L.Ed. 1022; Chicago & E. I. R. R. Co. v. Collins Produce Co., 249 U.S. 186, 192, 39 S.Ct. 189, 63 L.Ed. 552; Louisiana Southern Ry. Co. v. Anderson, 5 Cir., 191 F.2d 784; Commodity Credit Corp. v. Norton, 3 Cir., 167 F.2d 161.

The exceptions to the rule of absolute liability are those which relate to losses arising from acts of God, acts of the public enemy, the inherent nature of the goods, and acts of the shipper. It is contended in this case that the carrier falls within the last mentioned exception because of the negligence of the United States in loading the engines and fastening them insecurely to the floor of the truck. The evidence in the case and the findings of the District Judge sustain this charge factually; but it does not follow that the carrier was thereby exempted from its ordinary responsibility for the safe carriage of the goods. It has been held in sweeping terms that the duty rests upon the carrier to see that the packing of goods received by it for transportation is such as to secure their safety. Hannibal & St. J. R. R. Co. v. Swift, 12 Wall. 262, 273, 20 L. Ed. 423. Moreover, it is provided by 49 U.S.C.A. § 316(b) that it shall be the duty of every common carrier by motor vehicle to furnish adequate facilities for the transportation of property and to establish and enforce just and reasonable regulations and practices relating to the manner of packing and delivering goods for transportation; and it is also provided by regulations of the Interstate Commerce Commission, 49 C.F.R. 193.9 (a) and (b) that the load on every motor vehicle transporting property shall be secured in order to prevent unsafe shifting of the load and that no motor vehicle shall be driven unless the driver shall have satisfied himself that all means of fastening the load are securely in place.

The primary duty as to the safe loading of property is therefore upon the carrier. When the shipper assumes the responsibility of loading, the general rule is that he becomes liable for the defects which are latent and concealed and cannot be discerned by ordinary observation by the agents of the carrier; but if the improper loading is apparent, the carrier will be liable notwithstanding the negligence of the shipper. This rule is not only followed in cases arising under the federal statutes by decisions of the federal courts but also for the most part by the decisions of the state courts. See Alabama & V. Ry. Co. v. American Cotton Oil Co., 5 Cir., 249 F. 308; Blytheville Cotton Oil Co. v. Kurn, 6 Cir., 155 F.2d 467, 470; Lever Bros. v. Baltimore & O. R. Co., 4 Cir., 164 F.2d 738; Lewis Mach. Co. v. Aztec Lines, 7 Cir., 172 F.2d 746; Northwestern Marble & Tile Co. v. Williams, 128 Minn. 514, 151 N.W. 419, L.R.A. 1915 D, 1077; Atlantic Coast Line R. Co. v. Rice, 169 Ala. 265, 269, 52 So. 918, 29 L.R.A., N.S., 1214; 9 Am.Jur., Carriers, § 730.

Decisions to the contrary are found in Ross v. Troy & Boston R. R. Co., 49 Vt. 364 and Rixford v. Smith, 52 N.H. 355 which were cited by the Supreme Court of Virginia in Hines v. Buchanan, 131 Va. 88, 109 S.E. 219, but in the Virginia case the court concluded that the improper loading of the car by the shipper was not apparent to the agents of the carrier who received it.

In the pending case the judge found that the employees of the United States who loaded the truck were guilty of negligence in failing to use ordinary care to secure the engines properly and that the employees of Savage failed to exercise ordinary care in accepting the cargo in the manner in which it was loaded on the truck. He also found that the driver of the truck failed to exercise ordinary care in its operation, having knowledge of the nature of the cargo and the method of its loading and securing. The evidence supports these findings. The loading was entrusted by the United States to two laborers without supervision. The cylinders were set on end on the floor of the truck and secured by skids and timbers and steel tape $1\frac{1}{4}$" in width, nails being used to attach the structure to the floor of the truck which was partly decayed. The result was that the load shifted when the truck rounded the curve, traveling not over 50 miles an hour according to its driver, and the accident occurred.

■ With equal certainty it was shown that the agents of Savage inspected the load before the journey was begun and that the driver concluded from his observation that the load was not properly fastened to the truck when he took charge of it. Obviously it was his duty, having this knowledge, to drive with particular attention to the speed of the vehicle but he conducted himself as if conditions were normal and the catastrophe ensued. It follows, applying the rule above set out, that Savage is not entitled to recover from the United States for damages to the Savage truck, but that the United States is entitled to recover from Savage for the damage to its airplane engines and containers.

The conclusion has an important bearing upon the remaining question whether either of the parties, whose negligence contributed to the accident, is entitled to indemnity from the other. It is widely laid down as a general principle of law that one of several wrongdoers cannot recover against another although he may have paid all the damages flowing from the wrong done. The rule, however, has been relaxed in its application to such an extent and under so many circumstances, both by statute and by judicial decision, that it is perhaps more accurate to say that the equitable principle of contribution is generally recognized except where the wrongdoers commit an intentional wrong or an action which is *malum in se.* Washington Gas Light Co. v. District of Columbia, 161 U.S. 316, 16 S.Ct. 564, 40 L.Ed. 712; 13 Am.Jur., Contribution, § 40.

In some cases each of the wrongdoers is required to contribute to the payment of damages in equal shares, as was adjudged by the District Court in this case, while in others the ultimate loss is visited entirely upon the principal wrongdoer and others less culpable escape although they may be legally liable to the injured person. Union Stock Yards v. Chicago, B. & Q. R. Co., 196 U.S. 217, 224, 25 S.Ct. 226, 49 L.Ed. 453. For example, where there is recovery from a municipality for injuries caused by its failure to maintain its streets in safe condition recovery over by way of indemnity is allowed against one by whose active fault the dangerous condition was created since he is considered to be the real author of the injury. Washington Gas Light Co. v. District of Columbia, supra. See also United States v. Chicago, R. I. & P. Ry. Co., 10 Cir., 171 F.2d 377; Snohomish County v. Great Northern Ry. Co., 9 Cir., 130 F.2d 996, 1000.

In the infinite variety of circumstances where indemnity has been sought the courts have used various terms to distinguish between the grade of fault attrib-

utable to the participating wrongdoers so as to justify the imposition of the entire loss on the one who is regarded as the principal offender. The acts of the parties are variously contrasted as positive or negative, as in some of the cases last cited, and as active and passive in others; see Gray v. Boston Gas Light, 114 Mass. 149; or as primary and secondary, see American Dist. Tel. Co. v. Kittleson, 8 Cir., 179 F.2d 946; Fidelity & Casualty Co. v. Federal Express, Inc., 6 Cir., 99 F.2d 681; and sometimes one party is said to have been merely constructively liable and therefore entitled to indemnity from the actual wrongdoer. Oats v. Dublin Nat. Bank, 127 Tex. 2, 90 S.W.2d 824; 27 Am.Jur., Indemnity, § 18.

Sometimes the principal fault is attributable to the party who performed the last act which resulted in the damage and without which it would not have occurred, that is, to the party who had the last clear chance to avoid the accident. Nashua Iron & Steel Co. v. Worchester & Nashua R. Co., 62 N.H. 159; City of Tacoma v. Bonnell, 65 Wash. 505, 118 P. 642, 36 L.R.A.,N.S., 582, 583; Doles v. Seaboard Airline Co., 160 N.C. 318, 75 S.E. 722, 42 L.R.A.,N.S., 67.

Whatever the terminology, the inquiry is always whether the difference in the gravity of the faults of the participants is so great as to throw the whole loss upon one. In such event there is contribution in the extreme form of indemnity. See Slattery v. Marra Bros., Inc., 2 Cir., 186 F.2d 134.

▆▆▆ In the present case a combination of factors clearly shows that the principal fault lay with the carrier. First of all, there is the important circumstance that the carrier owed the contractual duty to the shipper to carry the goods safely and was not relieved from this duty by the negligent loading of the shipper; and this duty is the more onerous because the carrier had actual knowledge of the unsafe condition of the cargo and was therefore obliged to drive its truck with the highest degree of care. The existence of a contractual relationship between joint wrongdoers, and the breach of the duty by the one burdened therewith in the course of performing a separate and independent act without which the injury would not have occurred, are weighty circumstances in identifying the principal offender and saddling him with the liability of an indemnitor. Burris v. American Chicle Co., 2 Cir., 120 F.2d 218; Rich v. United States, 2 Cir., 177 F.2d 688. That situation obtained in the pending case. Savage was not only obligated to carry the goods safely but it had the last clear chance to avoid the catastrophe, and therefore as the principal offender it must indemnify the United States for any damages which it is obliged to pay to the injured parties.

The law of Virginia is in line with these conclusions. The common law rule, which forbids contribution among wrongdoers has been modified by statute which provides that contribution may be enforced when the wrong is a mere act of negligence and involves no moral turpitude. Va.Code 1950, § 8–627. The statute has been enforced in a number of cases. See Richmond Coca-Cola Botl'lg Works, Inc., v. Andrews, 173 Va. 240, 3 S.E.2d 419. The Supreme Court of Appeals of Virginia has also recognized that there may be indemnity among tort feasors. In McLaughlin v. Siegel, 166 Va. 374, 377, 185 S.E. 873, 874, in commenting on the numerous exceptions to the common law rule against contribution the court said "that where a party is only a technical wrongdoer, and did not actually participate in the wrongful act, such party, on being compelled to pay damages to the injured party, is entitled to contribution or indemnity from the actual wrongdoer."

The judgments in favor of Harris, Executrix, and in favor of Brooks against Savage will therefore be affirmed except that the provision thereof which awards Savage contribution from the United States will be stricken out.

The judgment in favor of Harris, Executrix, against the United States will be affirmed except that the provision

which awards contribution from Savage to the United States will be modified so as to award indemnity to the United States from Savage.

The judgment in favor of Brooks v. United States will be affirmed except that the provision which awards contribution from Savage to the United States will be modified so as to award indemnity from Savage to the United States, and except that the adjudication that the United States recover nothing from Savage for damages to the airplane engines and containers will be stricken out and in place thereof a judgment will be rendered in favor of the United States against Savage for damages in such amount as shall be determined in further proceedings by the court.

Affirmed and modified.