OPINION
Pedro J. Fernandez, plaintiff-appellant, appeals a judgment of the Franklin County Court of Common Pleas granting the motions for summary judgment filed by Anheuser-Busch, Inc., ("Anheuser-Busch") and Hi-Cube Express, Inc. ("Hi-Cube"), defendants-appellees.
Appellant is a semi-truck driver. On November 6, 1998, while acting as a subcontractor for Hi-Cube, appellant coupled his truck to a trailer while employees of Anheuser-Busch loaded it with palletized kegs of beer at the Anheuser-Busch brewery in Columbus, Ohio. During the loading process, appellant allegedly noticed fluid leaking from one of the stacks of kegs and notified the loading dock supervisor, who had the kegs cleaned. Appellant examined the kegs later and saw no fluid or residue. After the loading was finally completed and Hi-Cube inserted cardboard "dunnage" between the pallets to prevent side-to-side movement, appellant inspected the loaded trailer and secured three to four load locks at the rear of the trailer. Load locks are metal bars positioned at the rear of the load to stop the load from shifting forward or backward. Appellant drove the trailer to the brewery exit, where an Anheuser-Busch security employee confirmed the load was secure and the load locks were in place. After inspection, the security employee placed a seal on the trailer.
Appellant left the brewery and proceeded to travel south on Interstate 71 in Columbus. While nearing the junction of Interstates 71 and 70, appellant alleges he heard a noise from the trailer, saw smoke coming from the driver's side rear tandem of the trailer, and noticed the trailer tilting to the driver's side. Believing the load inside the trailer had shifted, appellant attempted to compensate for the shift and steered to his left. Appellant was unable to control the semi-truck and it began to roll. Eventually the truck struck the median wall, and appellant suffered injuries.
On October 31, 2000, appellant filed a complaint against Anheuser-Busch and Hi-Cube alleging they negligently loaded his trailer. He alleged that as a direct result of their negligence, he suffered permanent and severe injuries. After discovery commenced, on April 9, 2001, appellant filed a motion to compel Hi-Cube to answer certain interrogatories propounded on it, which the court denied on May 31, 2001. On June 5, 2001, appellant then filed a motion to reconsider and amend errors, in which he requested the trial court reconsider its May 31, 2001 decision. Appellant filed another motion to compel on June 6, 2001, on which the trial court did not rule. On June 11, 2001, appellant filed another motion to reconsider and amend errors, informing the court that Hi-Cube and he had agreed to an extension of time for Hi-Cube to answer four previously propounded interrogatories. On June 20, 2001, appellant filed a motion to compel Allen Davis to appear for a deposition, claiming Davis had been properly subpoenaed for a deposition to take place on June 14, 2001, but failed to appear.
On July 5, 2001, Hi-Cube filed a motion for summary judgment. On July 9, 2001, Anheuser-Busch filed its motion for summary judgment. On August 2, 2001, appellant filed a memorandum contra and a cross-motion for summary judgment. Hi-Cube filed a renewed motion for summary judgment on August 6, 2001.
On September 18, 2001, the trial court filed several pleadings, in which it: (1) denied appellant's cross-motion for summary judgment; (2) granted appellant's motion to reconsider and amend errors filed June 11, 2001; (3) granted Anheuser-Busch's motion for summary judgment; and (4) granted Hi-Cube's motion for summary judgment, although the decision caption and some of the language within the decision erroneously indicated that Hi-Cube's motion had been denied. On September 20, 2001, the trial court filed a nunc pro tunc decision and entry correcting its September 18, 2001 decision and granting Hi-Cube's motion for summary judgment.
On October 1, 2001, appellant filed a motion to reconsider and correct errors with regard to the September 18, 2001 decision denying his motion for summary judgment against Hi-Cube and granting Hi-Cube's motion for summary judgment. On October 9, 2001, the trial court filed an order/entry granting summary judgment to Hi-Cube and denying appellant's cross-motion for summary judgment. On October 11, 2001, the trial court filed an entry granting Anheuser-Busch's motion for summary judgment and denying appellant's cross-motion for summary judgment. Also on October 11, 2001, appellant filed a motion for the trial court to abstain from issuing a final order granting summary judgment to Hi-Cube and Anheuser-Busch. On October 12, 2001, appellant filed a motion to reconsider the October 9, 2001 entry granting summary judgment to Hi-Cube. On October 15, 2001, appellant filed a motion opposing the October 11, 2001 entry of summary judgment for Anheuser-Busch.
On October 17, 2001, the trial court issued a decision and entry rendering appellant's June 20, 2001 motion to compel moot and indicating that the motions for summary judgment were ripe for adjudication prior to his being able to order Allen Davis to appear. Also on October 17, 2001, the trial court issued a decision and entry denying appellant's October 1, October 11, and October 15, 2001 motions. Appellant appeals the trial court's determinations, asserting the following nine assignments of error:
 I. The Court erred when ruling on Defendants['] motions for Summary Judgment disregarding a previously filed motion to compel by Plaintiff of a witness that had relevant information in favor of Plaintiff.
 II. The Court erred when GRANTING Defendants' motions for Summary Judgment disregarding the fact that Plaintiff proved that perjury had been committed when answering Interrogatories.
 III. The Court erred when refusing to hear relevant evidence attempted to be submitted in the Conference in Chambers that took place October 11th, 2001.
 IV. The court erred when recognizing the capacity of Plaintiff and Defendants in a way that gravely affected the substantive rights of Plaintiff.
 V. The Court erred when deciding upon motions entered by Defendants notwithstanding the previous undecided upon motions entered by Plaintiff that would have had an effect on deciding Defendants' motions.
 VI. The Court erred when issuing a Judgment in favor of Defendants, contrary to the weight of evidence and proof in favor of Plaintiff.
 VII. The Court erred as it is impossible that a responsible party didn't exist due to the nature of the case that was also regulated by Federal Regulations, when granting Summary Judgment to both Defendants.
 VIII. The court erred when deciding not to use the court's authority in the benefit of Justice, accelerating decisions after a period of wait longer than three months since Plaintiff's motions had been submitted and undecided upon.
 IX. The Court erred when notwithstanding the evidence submitted by Plaintiff persisted in granting motions in favor of Defendants repeatedly even after acknowledging previous errors that should have been considered.
Appellant's first, fifth, and eighth assignments of error will be addressed together, as they are related. With regard to appellant's first assignment of error, appellant asserts the trial court erred when it ruled on appellees' motions for summary judgment without first ruling on his previously filed motion to compel the testimony of Allen Davis. The trial court ruled that the motion to compel was moot because all of the parties filed motions for summary judgment before it had the opportunity to render a decision on the motion to compel, and the motions for summary judgment were ripe for decision.
Appellant argues that he was prejudiced by being unable to take the deposition of Allen Davis, an employee of Hi-Cube, whom appellant alleges was one of the individuals that loaded his trailer. As this court has held, when a trial court enters judgment without expressly determining a pending motion, the motion is impliedly denied. Skladany v. Stark Publishing Co. (1996), Franklin App. No. 96APE06-767; Maust v. Palmer (1994), 94 Ohio App.3d 764, 769. As such, when the trial court entered summary judgment without ruling on appellant's motion to compel, it impliedly denied that motion and, therefore, the motion was no longer pending.
Further, appellant did not request a continuance or deferral of the action for purposes of conducting the deposition. Civ.R. 56(F) affords a party opposing summary judgment a mechanism whereby it can seek deferral of an action on a motion for summary judgment so that it may obtain affidavits or conduct relevant discovery. When a party opposing a motion for summary judgment moves for a continuance pursuant to Civ.R. 56(F), a trial court may not grant the summary judgment motion without first considering and ruling upon the opposing party's Civ.R. 56(F) motion for a continuance. Collier v. Borror Corp. (1998), Franklin App. No 97APE12-1624, citing Hartwell v. Volunteers of America (1981),2 Ohio App.3d 37. Although Civ.R. 56(F) authorizes a trial court to delay a decision on a summary judgment motion while the nonmoving party gathers necessary rebuttal data, an appellant who fails to seek relief under Civ.R. 56(F) in the trial court fails to preserve the issue for purposes of appeal. Stegawski v. Cleveland Anesthesia Group, Inc. (1987),37 Ohio App.3d 78.
In the present case, appellant responded to appellees' motions for summary judgment with his own summary judgment motions and citations to various depositions. He did not argue that his ability to present his case had been prejudiced by the trial court's failure to rule on his motion to compel. Appellant never filed a Civ.R. 56(F) motion in the trial court even though his motion to compel was pending. Accordingly, the trial court implicitly denied the motion to compel, and, regardless, appellant failed to preserve the issue for purposes of appeal.
With regard to appellant's fifth and eighth assignments of error, appellant argues the trial court erred in addressing the parties' motions for summary judgment before addressing other pending motions. In these two assignments of error, appellant does not specifically state which motions were pending at the time of the decisions on the motions for summary judgment or which decisions were not rendered until after the motions for summary judgment were issued. Regardless, as stated above, the trial court impliedly denied any pending motions when it issued its decisions on the motions for summary judgment. To the extent that the trial court may not have ruled upon various motions until after the motions for summary judgment were granted, appellant failed to allege in his memoranda contra and cross-motion for summary judgment that he was prejudiced by the trial court's failure to yet rule upon these pending motions. For the foregoing reasons, appellant's first, fifth, and eighth assignments of error are overruled.
Appellant argues in his second assignment of error the trial court erred when it granted the motions for summary judgment disregarding the fact that appellant proved that perjury had been committed when appellees answered interrogatories. Appellant's argument is generally centered on two answers to interrogatories given by Anheuser-Busch. Anheuser-Busch originally indicated in its answer to interrogatory three that it did not ship its products to purchasers, and indicated in its answer to interrogatory eleven that no Hi-Cube employees were present during the loading of the kegs in question. However, Anheuser-Busch later supplemented its answers to these interrogatories on August 17, 2001. In its supplemental response to interrogatory three, it indicated that it does transport the products from the loading dock as a starting point toward their destination but does not transport the product to its destination. In response to interrogatory eleven, it indicated that recent discovery revealed an unidentified Hi-Cube employee was present during the loading of the trailer. Given these supplemental answers, which were filed and available to the trial court before the court granted the summary judgment motions, we cannot say the trial court erred in addressing and granting summary judgment.
Insofar as appellant may also be arguing that Hi-Cube committed perjury in answering some of its interrogatories, such argument is not developed in his brief. This court has reviewed appellant's argument regarding contradictions in Hi-Cube's answers to interrogatories, as presented in appellant's June 20, 2001 motion for a conference, but we fail to see any material contradiction or misrepresentation. Further, although appellant claims he demonstrated to the trial court at the October 11, 2001 status conference that the parties committed perjury, we do not have a transcript of that conference and cannot review its proceedings. For the foregoing reasons, appellant's second assignment of error is overruled.
Appellant argues in his third assignment of error the trial court erred when it refused to hear relevant evidence he attempted to submit in the October 11, 2001 conference. Specifically, appellant allegedly offered to the trial court during the conference a videotape that contained a live, on-scene news broadcast by a reporter from a local television station in which the correspondent states the accident in question was caused by a load shift. The newscast also related comments made by several alleged eyewitnesses. As previously noted, we do not have a transcript of the October 11, 2001 conference. Further, none of the statements contained in the videotape were taken under oath or presented in any admissible manner designed to assure veracity. Further, the value of the videotape is dubious. The witnesses could not have determined that a load shift occurred inside the trailer, as no one could view the contents of the enclosed compartment. Certainly any statements made by the news reporter, which appellant cites as convincing evidence, would have been hearsay because he was not an actual eyewitness to the accident. For these reasons, appellant's third assignment of error is overruled.
Appellant argues in his ninth assignment of error the trial court "erred when notwithstanding the evidence submitted by Plaintiff persisted in granting motions in favor of Defendants repeatedly even after acknowledging previous errors that should have been considered." Insofar as this argument is the same as that raised in his first, fifth, and eighth assignments of error, which we have already overruled, such is not well-taken. Otherwise, appellant's assignment of error does not specify what errors the trial court made or to which motions he refers. An appellant must indicate to the appellate court specifically where the trial court's alleged errors may be located as a reviewing court is not obliged to search a record for evidence of alleged error. See State v. Miller (1988), 56 Ohio App.3d 130, 131. Therefore, appellant's ninth assignment of error is overruled.
We will address appellant's remaining assignments of error together, as they are related. Appellant argues in his fourth assignment of error the trial court erred when it improperly categorized the respective parties. Appellant argues in his sixth assignment of error that the trial court's judgment was against the manifest weight of the evidence. Appellant argues in his seventh assignment of error the trial court erred when it stated that there might not have been a responsible party.
Pursuant to Civ.R. 56, summary judgment is appropriate when: (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor. Zivich v. Mentor Soccer Club, Inc. (1998), 82 Ohio St.3d 367,369-370. "When reviewing a trial court's ruling on summary judgment, the court of appeals conducts an independent review of the record and stands in the shoes of the trial court." Mergenthal v. Star Banc Corp. (1997),122 Ohio App.3d 100, 103.
The standard for assessing the manifest weight of the evidence in a civil case is whether the judgment is "supported by some competent, credible evidence going to all the essential elements of the case." C.E. Morris Co. v. Foley Construction Co. (1978), 54 Ohio St.2d 279, syllabus. Furthermore, a reviewing court must be guided by the presumption that the findings of a trial court are correct, as the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony. Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80.
In order to have a viable claim for negligence, appellant must establish four elements. The elements of negligence are: (1) the existence of a duty; (2) breach of that duty; (3) proximate cause between the breach and some damage to the plaintiff; and (4) damage to the plaintiff. Miller v. Superior Electric Co. (2000), Franklin App. No. 00AP-53. "All of the elements of negligence must be demonstrated for a plaintiff to recover under a theory of negligence." Whiting v. Ohio Dept. of Mental Health (2001), 141 Ohio App.3d 198, 202, following Osler v. Lorain (1986), 28 Ohio St.3d 345, 347.
Appellant argues that the trial court assigned the respective duties incorrectly because it misidentified his and Hi-Cube's capacities under federal regulation. Appellant maintains that he should be considered a "driver" under 49 C.F.R. § 390.5 and Hi-Cube should be defined as a "carrier." Hi-Cube contends that appellant should be classified as both a "driver" and "carrier." Although it is not abundantly clear, Hi-Cube apparently believes that it should be classified as a "shipper." The trial court's decision is not entirely clear either, but apparently the trial court found Hi-Cube to be a "carrier," as it stated when discussing Rector v. General Motors Corp. (C.A.6, 1992), 963 F.2d 144: "Unlike the case before the Court, the carrier of the goods, Rite Trucking Lines, was not a defendant in the Rector case. * * * The Court found that the duty rested with the carrier (although not a party to the action) and that the defendant shippers did not owe a duty to the plaintiff to load the gears safely in the truck." The parties agree that Anheuser-Busch is a "shipper" under federal law. However, we find it is unnecessary to define appellant's capacity for purposes of determining summary judgment at this juncture. We need only determine the duties owed by each appellee and whether there remains a genuine issue of material fact as to whether they breached such duty.
Assuming, arguendo, that Hi-Cube was a "carrier," as appellant maintains and the trial court found, the duty rests upon the carrier to assure that the packing of goods received by it for transportation is such as to secure their safety. United States v. Savage Truck Lines, Inc. (C.A.4, 1953), 209 F.2d 442, 445. Thus, "'[a]s a general rule, the carrier has the primary duty to load and unload goods or inanimate freight shipped in less than carload lots, and is liable for damages resulting from its failure to perform that duty in a proper manner.'" Rector, supra, at 146, quoting 13 Am.Jur.2d Carriers § 319 (1964). (Emphasis sic.)
With regard to Anheuser-Busch, only if and when a shipper assumes the responsibility for loading its property on a motor vehicle does it have the duty to exercise reasonable care to see that the load is properly secured. Pierce v. Cub Cadet Corp. (C.A.6, 1989), 875 F.2d 866. "`The general rule is that [the shipper] becomes liable for the defects which are latent and concealed and cannot be discerned by ordinary observation by the agents of the carrier; but if the improper loading is apparent, the carrier will be liable notwithstanding the negligence of the shipper.'" Id., quoting Savage Truck Line, supra, at 445.
Even assuming the above duties, appellant has failed to raise a genuine issue of material fact with regard to Hi-Cube's or Anheuser-Busch's breach of such duties. Appellant stated in his complaint that he observed the loading of the beer. He observed it closely enough to notice an oily substance was present on the pallets, which was subsequently cleaned. Appellant indicated in his complaint that he visually inspected the loaded pallets. Hi-Cube installed the dunnage, and appellant personally installed three or four load locks. Security personnel at Anheuser-Busch then inspected the load. Appellant further alleged that as he drove the load on Interstate 71, he saw smoke coming from the driver's side axle, and the truck tilted to the left, causing the truck to roll.
Appellant has simply failed to sustain his burden of producing some evidence to support his allegations that improper loading by Hi-Cube and Anheuser-Busch caused a load shift and was the proximate cause of the accident. Appellant testified in his deposition that he visually inspected the load himself after it was loaded, and he was experienced in such, having previously transported twenty to twenty-five loads of palletized kegs. He stated that the way Anheuser-Busch and Hi-Cube loaded the trailer using dunnage and compression was the standard procedure and accepted as a safe way to transport a beer load. He indicated that after he inspected the load and before the doors were shut on the trailer, the load looked like it had been loaded under normal conditions. He testified that on prior occasions he had requested a load be modified when he felt it was improperly loaded or improperly secured. He also said that if he believed there was a problem with the dunnage in the present case, he could have remedied the problem by asking the Hi-Cube employee to move the dunnage. He specifically testified that he was satisfied, based on his observations, that the dunnage was properly placed on the load. He admits in his deposition "I have no idea what happened inside of the trailer, exactly." He also stated that he had "no idea" how Anheuser-Busch could have improperly loaded the trailer or what they could have done wrong. When asked how a load could shift while driving down a straight highway, appellant stated: "To tell you the truth, until this day I'm still puzzled. * * *"
Appellant further testified he specifically looked for any oil on the pallets or on the floor of the trailer after he had load-locked and before he exited the brewery, but did not see any. Appellant could not testify as to what the inside of the trailer looked like after the accident because it was too cluttered with debris. He also never visually inspected any of the pallets after the collision to determine if they had any oil on them. He admitted that nobody could say whether there was oil on the trailer floor. Appellant testified that nobody he talked to from Hi-Cube, Anheuser-Busch, or anyone else, ever told him there was oil remaining on the kegs or pallets or stated that the load had been improperly placed in the trailer. He agreed that there was nothing he observed on the day of the accident that would have caused him to believe the load had been negligently placed within the trailer. He stated that after he placed the load locks in the trailer, he had better or as much knowledge as anyone else about the safety of the load.
Kirk Fenton, the forklift driver for Anheuser-Busch who loaded the kegs into the trailer in question, testified that, although he did not remember the specific trailer in question, he was satisfied that how he loaded trailers complied with safety standards and the customarily accepted loading procedure for Anheuser-Busch. He further agreed that placing restraining devices such as load locks on the back of the load should have made the load safe for travelling. He stated that he saw the accident on the news, but he did not connect it with anything he had done that day at work, and he has no recollection of anything unusual happening as he loaded the trucks that day.
Geri Yates, who placed the cardboard separators between loaded pallets for Hi-Cube at the brewery during the time in question, testified that according to documentation, appellant's truck was loaded with a standard pattern. She testified that she had heard of other trailers rolling over before due to load shifts.
Mike Miller, a supervisor for Hi-Cube at the brewery location, testified that he had seen a few load shifts since he worked for Hi-Cube. He stated that he was not aware of any facts that would cause him to be critical of anything Anheuser-Busch did with respect to the loading of the trailer on the day of the incident. Miller stated he was sure appellant inspected the load, and if appellant would have thought it had been improperly loaded, he could have requested that the problem be fixed.
Steven Walker, a manager for Hi-Cube who was dispatched to the accident scene, testified that he did not observe anything at the scene or since the accident that made him believe Anheuser-Busch improperly loaded the trailer. He testified that given that the load pattern was appropriate for the product being hauled, he saw no other reason, besides excessive speed, that the load would have shifted.
Besides his own deposition testimony, the only other evidence appellant presented in opposition to the motions for summary judgment was the testimony of two eyewitnesses to the accident given during the trial on appellant's citation for failure to control his vehicle. The trial court acknowledged the testimony of the witnesses, Robert Sturgill and Samuel Pelletier, in its decisions, but found that such lay testimony was unconvincing. Sturgill, who is also a truck driver, was traveling behind appellant and testified that he saw the rear tires of the trailer rise as it turned the corner. The tires then came back onto the pavement before the truck rolled into the concrete divider. Sturgill opined that the cause of the accident was a load shift. Pelletier, who was driving in the opposite direction as appellant, testified that he saw a puff of smoke come from the rear of the trailer, as if the result of hard braking, and the truck raised and landed on the median divider.
The testimony presented in support of summary judgment demonstrates that appellant has failed to raise a genuine issue of material fact that Anheuser-Busch or Hi-Cube negligently loaded the trailer and caused the accident to occur. To the contrary, appellant's own testimony indicates that he visually inspected the load and saw nothing wrong; Anheuser-Busch used the standard, safe, and accepted procedures for packing a beer load; appellant observed nothing wrong with the dunnage placed by Hi-Cube; and appellant has "no idea" what happened inside the trailer or how the load could have shifted on a straight highway. Further, neither Sturgill nor Pelletier were qualified or recognized by any court as experts in accident reconstruction or load shifts in tractor-trailers. Most importantly, the testimony of Sturgill and Pelletier does not demonstrate whether or not Anheuser-Busch or Hi-Cube negligently loaded the trailer or that negligent loading was the cause of the accident.
In sum, there were numerous other sources of negligence that could have caused the truck to roll over, including excessive speed, poor driving, a manufacturing defect in the tractor, faulty tires or axles, or failure of the load locks. It is also possible that a defect in the road existed, so as to make none of the parties involved in the present case negligent. Construing the evidence in a light most favorable to appellant, we find that appellant has failed to sustain his burden to produce evidence raising a genuine issue of material fact as to any specific negligent act of Anheuser-Busch or Hi-Cube. Therefore, we find the trial court's decision was supported by competent, credible evidence. Appellant's fourth, sixth, and seventh assignments of error are overruled.
Hi-Cube has also filed a motion to strike appellant's reply brief as lengthy and for sanctions. On March 25, 2002, we denied the motion to strike. With regard to the motion for sanctions, Hi-Cube contends that appellant's reply brief contains scandalous and impertinent material. Though we admonish appellant to refrain from using ad hominem attacks against opposing counsel or voicing irrelevant personal opinions, we find sanctions are not warranted here. Therefore, we deny Hi-Cube's motion for sanctions.
Accordingly, appellant's nine assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
KLATT and PETREE, JJ., concur.