**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-16-00275-CV**

_____


**UNIMEX LOGISTICS, LLC AND MARGO LOGISTICS LP, Appellants**

**V.**

**TIM NEFF TOWING, INC. D/B/A TNT WRECKER SERVICE, Appellee**

**On Appeal from the County Court at Law No. 1**
**Jefferson County, Texas**
**Trial Cause No. 125195**

**MEMORANDUM OPINION**

In this appeal, Unimex Logistics, LLC seeks to overturn a judgment holding it liable for the remaining balance owed to Tim Neff Towing, Inc. for the services it provided to clean up a spill, which resulted from an accident involving an eighteen-wheeler, and to tow and then store the eighteen-wheeler that was involved in the

accident to its yard.[1] In its appeal, Unimex argues that the evidence fails to justify the trial court's decision holding it liable to Neff Towing for the services it provided following the spill.[2]

We hold that the evidence admitted during the trial authorized the trial court to hold Unimex liable in quantum meruit for the balance Neff Towing was owed for the services it provided to the equipment and cargo involved in the spill. Accordingly, we affirm the trial court's judgment.

Background

In July 2013, an eighteen-wheeler operated by Unimex overturned while on the westbound side of Interstate Highway 10. At the time of the incident, Unimex was operating the eighteen-wheeler to transport a cargo of brake calipers. The tractor being used to deliver the cargo of calipers was leased to Unimex by Margo Logistics. The Unimex/Margo Logistics lease provides: "The [tractor] shall be for [Unimex's]

---

[1] Margo Logistics, LP also filed a notice of appeal following the trial, but it did not then file a brief explaining why the trial court's judgment should be overturned.

[2] All monetary amounts that we mention in the opinion have been rounded to the nearest dollar. Under the trial court's judgment, Unimex is required to pay $21,332 of Neff Towing's bill after the court credited Unimex with having paid $14,562 of Neff Towing's charges, which totaled $35,942. It was undisputed that before Unimex appeared in the suit, it paid Neff Towing $14,562, which appears to be the amount that Neff Towing charged to clean up the site where the eighteen-wheeler overturned.

exclusive possession, control, and use for the duration of this Agreement." Under the lease, Unimex was the entity that was responsible for all of the equipment that Neff Towing towed to its yard. During the trial, and in the appeal, Unimex has not disputed that it owned the trailer involved in the spill.

After Neff Towing cleaned up the spill, it towed the eighteen-wheeler to its yard. Two weeks later, Neff Towing sent Unimex information indicating that charges had been incurred and were being incurred for its services. The information Unimex received from Neff Towing informed Unimex that the eighteen-wheeler was incurring charges on a daily basis, and that it would continue to do so until the rig was released from Neff Towing's yard.

In 2016, the dispute concerning Neff Towing's bills for the services it provided after the spill was tried to the bench. During the trial, the evidence established that Unimex was the designated carrier under the Department of Transportation regulations that apply to a carrier for hire for the trip that ended in the spill. The evidence also established that following the spill, Neff Towing towed the eighteen-wheeler to its yard without Unimex's consent based on the directions of a police officer, who authorized Neff Towing to remove the eighteen-wheeler from the highway.

During trial, Unimex argued that it was not responsible for Neff Towing's charges because it did not own the tractor or the cargo involved in the spill. Unimex also claimed that it was not responsible for the charges that Neff Towing assessed following the spill.

Unimex called its operations manager during the trial. He testified that while Unimex owned the trailer involved in the incident, Margo Logistics owned the tractor. Witnesses called by Neff Towing established that following the spill, Neff Towing helped clean up the site and then towed the rig to its yard. The evidence established the rig was still being stored at Neff Towing's yard when the trial occurred. Although Unimex argued that it paid part of Neff Towing's charges following the spill, it argued that Margo Logistics and the owner of the cargo were the entities that were responsible for the remaining balance owed to Neff Towing for its services following the spill.[3]

---

[3] The lease agreement between Unimex and Margo Logistics includes an indemnity provision. In general, the indemnity agreement required Margo Logistics to indemnify Unimex for expenses and damages that Unimex might incur as a result of Margo Logistics' leased-driver's operation of the tractor. The clerk's record reflects that Unimex counterclaimed against Margo Logistics alleging that Margo Logistics breached the indemnity agreement by failing to pay the Neff Towing's charges. In the final judgment, the trial court found that Margo Logistics breached the indemnity obligation, and in its judgment, the court required Margo Logistics to indemnify Unimex in the amount of $35,894.

Approximately three weeks after the trial, the trial court signed a judgment awarding Neff Towing $21,332 in damages, together with additional awards for prejudgment interest and attorney's fees. In the judgment, the trial court made Margo Logistics and Unimex jointly and severally liable for the amounts the trial court awarded to Neff Towing. The judgment also requires Margo Logistics to indemnify Unimex from the charges Neff Towing assessed following the spill, and the awards include additional awards for the attorney's fees.

Within the period required by Rule 296, Unimex asked the trial court to reduce its findings and conclusions to writing. *See* Tex. R. Civ. P. 296 (Requests for Findings of Fact and Conclusions of Law). Thereafter, the trial court issued its written findings and conclusions. The findings the trial court made that are particularly relevant to our discussion of the issues Unimex raises in its brief are summarized below:

- The services provided by Neff Towing were provided for the benefit of both Unimex and Margo Logistics;
- Neff Towing's charges for its services, $32,719, were reasonable and necessary, and were applied to both the tractor and trailer without separating the charges between the components of the rig because nothing

required Neff Towing to separate the amounts it charged between Margo Logistics and Unimex;

- Both Unimex and Margo Logistics were provided with written notice advising them that Neff Towing expected to be compensated for the services it provided and was providing to the rig;

- Based upon customary practices in the trucking industry, both Unimex and Margo Logistics knew that Neff Towing expected to be compensated for the services it provided to the rig;

- Unimex paid Neff Towing $14,562 for the services Neff Towing provided after the spill occurred;

- The reasonable value of the services that Unimex and Margo Logistics received from Neff Towing that remained unpaid at the time of the trial is $21,332; and

- Unimex and Margo Logistics should be jointly and severally liable to Neff Towing because both benefitted from Neff Towing's services and nothing required Neff Towing to divide its charges between the rig's tractor and trailer.

In eleven appellate issues, Unimex argues the trial court erred by (1) finding Unimex liable to Neff Towing on Neff Towing's quantum-meruit claim; (2) finding

6

that Neff Towing gave Unimex sufficient notice that Neff Towing expected to be compensated for the services it had provided following the spill; (3) holding Unimex liable on Neff Towing's quantum-meruit theory of recovery when Neff Towing's services also benefitted Margo Logistics and the owner of the cargo, at least in part; (4) finding that Unimex benefitted from Neff Towing's services when Unimex did not own the tractor involved in the spill, and finding that Unimex's trailer benefitted from Neff Towing's nonconsent tow; (5) ruling that Neff Towing established that all of its services were provided for Unimex's benefit; (6) finding that Neff Towing was not required to segregate its charges between the services that it provided to the tractor, the trailer, and the cargo; (7) concluding that Neff Towing was not required to apportion its charges between Unimex and the others that Unimex claimed were responsible for paying for those services; (8) holding Unimex and Margo Logistics liable to Neff Towing on the grounds they jointly owned the tractor and the trailer that were involved in the spill; (9) making Unimex and Margo Logistics jointly and severally liable for Neff Towing's unpaid charges; (10) holding Unimex and Margo Logistics liable on a joint enterprise theory; and (11) concluding that Neff Towing had no adequate remedy at law, when an adequate legal remedy existed allowing Neff Towing to sell the tractor that Margo Logistics owned to recoup the charges Neff Towing assessed following the spill.

Standard of Review

Unimex challenges the trial court's findings of fact and conclusions of law that allowed the trial court to hold Unimex responsible for all of the services Neff Towing provided following the spill. *See* Tex. R. Civ. P. 296. A de novo standard of review is applied when reviewing a trial court's written conclusions of law. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). On appeal, the trial court's legal conclusions may not be challenged for factual insufficiency; instead, the trial court's conclusions are reviewed to determine whether, under the law that applies to the case, the trial court properly applied the law. *Id.*

When a trial court provides the parties with written findings of fact, the trial court's findings are given the same force and dignity applied to a verdict that resulted following a trial before a jury. *See Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996). Accordingly, legal and factual insufficiency issues that an appellant raises following a bench trial are reviewed using the same standards that would be applied to the review of those issues had the case been tried to a jury. *Id.*

When conducting a legal-sufficiency review, we consider the evidence admitted in the trial in the light that favors the findings that are being challenged in the appeal, indulging in every reasonable inference available from such evidence in deciding whether legally sufficient evidence supports the trial court's findings. *See*

8

*City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005). We credit evidence that favors the trial court's finding if a reasonable judge, as the factfinder, could have made the challenged finding, and we disregard evidence that is contrary to the trial court's finding unless the trial court could not have disregarded that same evidence in reaching the finding that has been challenged in the appeal. *See id*. at 827. Ultimately, we must determine if the evidence before the trial court allowed the court to reasonably reach the findings that the appellant has challenged in the appeal. *See id*. When the parties try the case to the bench, the trial court is the sole entity that is allowed to judge the credibility of the witnesses. *Id*. at 819. In making credibility determinations, the trial court also has the right to weigh the testimony of the witnesses in the process of reaching its verdict. *Id*.

When the appellant raises factual-sufficiency complaints in its appeal, we examine the entire record with respect to the findings being challenged and consider all of the evidence admitted in the trial to evaluate a party's claim that the trial court could not have reasonably reached the findings under review. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). After considering all of the evidence the trial court considered, we may set the trial court's findings aside only if we have determined that its findings were so contrary to the overwhelming weight of the evidence that

the conclusion that the trial court reached was clearly wrong and unjust. *See Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986).

Analysis

At the outset, we note that the brief Unimex filed to support its appeal fails to group the arguments it presented with its eleven issues. Instead, Unimex divided its arguments into eight sections in its brief, titling them as follows: "Nonconsensual Towing[,]" "No Timely Notice to Unimex[,]" "Unimex Did Not Accept, Benefit, or Enjoy [Neff Towing's] Services[,]" "[Neff Towing] Failed to Segregate Charges[,]" "[Neff Towing] Had an Adequate Remedy at Law[,]" "No Joint Enterprise[,]" "No Joint and Several Liability[,]" and "Vehicle/Truck/Trailer Not Jointly Owned[.]"[4] The judgment the trial court rendered favoring Neff Towing is based solely on Neff Towing's quantum-meruit claim. A quantum-meruit claim is an equitable remedy, and it "is based upon the promise implied by law to pay for beneficial services rendered and knowingly accepted." *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 740 (Tex. 2005) (internal citations omitted). The reason that quantum-meruit

---

[4] Rule 38.1(i) requires the brief to contain a "clear and concise argument" for the contentions the appellant raises in his issues. Tex. R. App. P. 38.1(i). To avoid any confusion about our resolution of Unimex's eleven issues, and because Unimex's brief does not clearly explain how its issues fit within its various arguments, we have chosen to issue an opinion tracking the headings Unimex placed on its arguments, reserving our specific rulings on Unimex's issues until the opinion's last paragraphs.

recoveries are allowed is that otherwise, the party that received valuable services from another would be unjustly enriched if allowed to retain the benefits for the services that it received from the plaintiff without paying for them. *See Truly v. Austin*, 744 S.W.2d 934, 938 (Tex. 1988) (citing 5A A. Corbin, CORBIN ON CONTRACTS § 1122 (1964)).

To recover on a quantum-meruit claim, a plaintiff is generally required to prove (1) that the plaintiff rendered valuable services or provided materials to another; (2) that the defendant, who is being sued, benefited from those services; (3) that the services or materials the plaintiff provided to the defendant were accepted, used, and enjoyed by the defendant; and (4) that the defendant was given reasonable notice that the plaintiff expected payment. *See Vortt Expl. Co., Inc. v. Chevron U.S.A., Inc.,* 787 S.W.2d 942, 944 (Tex. 1990). In situations in which an express contract exists covering the services or materials that the plaintiff furnished to the defendant, a recovery under a quantum-meruit theory is unavailable. *Id*. With the general rules that apply to quantum-meruit claims in mind, we turn to the arguments Unimex presents seeking to overturn the result it achieved in the trial.

*Nonconsensual Tow*

First, Unimex argues that Neff Towing towed the tractor from the scene of the spill without its consent in a nonconsent tow.[5] According to Unimex, because it did not own the tractor, it was not responsible for any of the charges associated with the tow. Additionally, it argues that the Occupations Code authorization for nonconsent tow applies only to motorized vehicles, not to equipment like trailers that are not motorized. *See* Tex. Occ. Code Ann. § 2308.002(6) (West Supp. 2017). According to Unimex, Margo Logistics, as the entity that owned the only motorized equipment towed from the spill, is the only party responsible for all of the charges that were assessed against the equipment that Neff Towing towed to its yard.

The trial court's findings that allowed it to find Unimex liable hinge on the trial court's conclusion that, as the carrier for the trip ending in the spill, Unimex was responsible for the tractor, the trailer, and the cargo that spilled. The trial court's findings against Unimex do not depend on the Occupations Code provisions that

---

[5] The Texas Occupations Code defines a nonconsent tow as "any tow of a motor vehicle that is not a consent tow, including: (A) an incident management tow; and (B) a private property tow." Tex. Occ. Code Ann. § 2308.002(6) (West Supp. 2017). A consent tow is defined as "any tow of a motor vehicle in which the tow truck is summoned by the owner or operator of the vehicle or by a person who has possession, custody, or control of the vehicle. The term does not include an incident management tow or a private property tow." *Id.* § 2308.002(3) (West Supp. 2017). In this case, the evidence shows the tow occurred after a peace officer requested that the eighteen-wheeler be towed from the site where the spill occurred.

apply to motorized equipment. Instead, the trial court's findings rely primarily on the provisions in the Unimex/Margo Logistics lease. The Unimex/Margo Logistics lease provides that "[t]he [tractor] shall be for [Unimex's] exclusive possession, control, and use for the duration of this Agreement[]" and that "[Unimex] shall assume complete responsibility for the operation of the [tractor] for the duration of this Agreement."

The spill occurred during a period that the lease made Unimex the responsible party for operations that ended in the spill. Because the Unimex/Margo Logistics lease provided that Unimex was the party with the exclusive right to possession, control, and use of the tractor in the period when the spill occurred, the trial court's determination that Unimex was liable for the towing charges for both the tractor and the trailer is a reasonable finding based on the evidence admitted in the trial. We conclude the language in the lease supports the trial court's conclusion that Unimex was legally responsible for the charges the eighteen-wheeler incurred for the tow that was necessary following the spill.

*No Timely Notice*

Next, Unimex argues that Neff Towing failed to present evidence that Unimex received timely notice that Neff Towing expected Unimex to pay for the towing and storage charges incurred after the spill. According to Unimex, it received

13

information from Neff Towing approximately two weeks after the spill that Neff Towing had towed the eighteen-wheeler from Chambers County to its yard. The information that Unimex received includes a document that Neff Towing sent to Unimex a few weeks after taking the eighteen-wheeler to its yard. The document indicates that the eighteen-wheeler that Neff Towing towed to its yard following the spill would continue to accrue charges until released by the yard. However, the information Unimex received from Neff Towing was a copy of the information that Neff Towing sent to Margo Logistics. The document does not expressly state that Neff Towing expected Unimex to pay for its services. Although a witness from Neff Towing acknowledged that he spoke to a Unimex representative several months after Neff Towing took the rig to its yard, Unimex argues that Neff Towing's representative never informed Unimex that Neff Towing was expecting Unimex to pay Neff Towing's charges.

The document that Unimex received from Neff Towing was admitted into evidence. It shows that Unimex received the document on August 1, 2013, approximately eighteen days after the spill occurred. The document identifies the make and model of the rig, contains information identifying where the eighteen-wheeler was being stored, reflects what Neff Towing was charging on a daily basis for storage, and identifies the outstanding fees that had accrued to date that had not

14

been paid. Additionally, the document informed Unimex of the date the tow occurred, the date the storage fees began to accrue, and how the eighteen-wheeler could be reclaimed. In our opinion, the information in the document together with the fact that Neff Towing sent it to Unimex offered sufficient evidence to support the trial court's finding that Neff Towing expected the parties to whom it sent the document to pay for the charges that were being assessed against the rig.

During the trial, Neff Towing's manager testified that he spoke with Unimex's employee, Rudy, about Neff Towing's charges. According to Neff Towing's manager, Rudy never objected to Neff Towing storing the eighteen-wheeler or the amount Neff Towing was charging to store the eighteen-wheeler. Neff Towing's manager explained that shortly after speaking with Rudy, Unimex sent Neff Towing a check for $14,562. Neff Towing's manager also testified that Rudy told him that Neff Towing could expect to receive a check for the remaining balance due Neff Towing after Unimex had discussed Neff Towing's charges with Margo Logistics and an insurance company. A corporate representative for Unimex also testified in the trial. Unimex's representative acknowledged that he authorized the payment Unimex made to Neff Towing after he learned that Neff Towing had not been paid.

The evidence in the trial reflects that Unimex was aware that Neff Towing was storing the eighteen-wheeler in its yard approximately two weeks after the

eighteen-wheeler was put into storage. There was also evidence showing that Unimex was aware of Neff Towing's daily storage rate, and evidence that allowed the trial court to conclude that Unimex's lease made it responsible for the charges the eighteen-wheeler incurred after the spill. We conclude that Unimex received timely notice with information sufficient to allow the trial court to find that it knew that Neff Towing would expect to be paid for the services that it provided following the spill. *See Vortt Expl.,* 787 S.W.2d at 944-45.

*Unimex Did Not Accept, Benefit, or Enjoy Neff Towing's Services*

Unimex also suggests that Neff Towing failed to produce evidence sufficient to prove that Neff Towing provided a service to Unimex or that Unimex enjoyed and accepted Neff Towing's services. The central thesis that runs throughout Unimex's various arguments in all of the sections of its brief is that the evidence failed to prove that it owned the tractor or the cargo that were involved in the spill. Based on the fact that it was not the owner of record for the tractor or the cargo, Unimex then concludes that it did not benefit from the services represented by the balance due on Neff Towing's bill.

Nevertheless, the evidence shows that Unimex owned the trailer involved in the spill, that its leased tractor was pulling the trailer involved in the spill, and that it was a carrier for hire as related to the cargo that spilled. With respect to carriers

16

for hire, the Texas Transportation Code provides that "the duties and liabilities of a carrier in this state and the remedies against the carrier are the same as prescribed by the common law" unless otherwise provided by law. *See* Tex. Transp. Code Ann. § 5.001(a)(1) (West Supp. 2017) (Duties, Liabilities, and Remedies of Carrier). Under the common law of Texas, carriers for hire are "fully" liable for any loss or injury to property occurring during transport. *See S. Pac. Ry. Co. v. Maddox,* 12 S.W. 815, 817 (Tex. 1889). While carriers may avoid the liability they have for the cargo or equipment used on a trip by showing that the loss or injury at issue was caused solely by the fault of the entity that owns the cargo, Unimex has never suggested that the cargo's owner loaded the cargo on the trailer in a manner that caused the spill. *See Mo. Pac. Ry. Co. v. Elmore & Stahl,* 368 S.W.2d 99, 101 (Tex. 1963), *aff'd*, 337 U.S. 134 (1964). And, even had Unimex properly raised that argument and presented evidence supporting it in the trial, the cargo-owner-fault exception applies only if the carrier establishes that the owner of the cargo assumed the responsibility the carrier has for loading and securing the cargo. *See U.S. v. Savage Truck Line, Inc.,* 209 F.2d 442, 445-47 (4th Cir. 1953), *cert. denied,* 347 U.S. 952 (1954). Unimex presented no such evidence in the trial. *See Mo. Pac. Ry. Co.,* 368 S.W.2d at 101; *Savage Truck Line, Inc.,* 209 F.2d at 445-47.

17

In this case, Unimex failed to plead and present evidence during the trial to show that the entity that owned the cargo was solely responsible for the spill or that the cargo owner agreed to assume Unimex's responsibility for loading the cargo onto the trailer involved in the spill. Consequently, as the carrier for the cargo at common law, Unimex was liable for the charges involved in cleaning up the spill. *See S. Pac. Ry. Co.,* 12 S.W. at 817. We conclude that the evidence in the trial was sufficient to establish that Unimex accepted and benefitted from the services that Neff Towing provided to the equipment and cargo after the spill. *See Vortt Expl. Co.,* 787 S.W.2d at 944-45.

*Neff Towing Failed to Segregate Charges*

Next, Unimex argues that Neff Towing should have divided its charges between the cargo, the trailer, and the tractor. According to Unimex, without evidence showing the charges that Neff Towing provided solely for the trailer's benefit, the verdict against it is excessive.

We have already explained that Unimex was the carrier for the trip that ended in the spill. As such, the evidence established that Unimex was fully liable for the reasonable and necessary charges that related to the cargo, the trailer, and the tractor following the spill. *See* Tex. Transp. Code Ann. § 5.001(a)(1). Because the common law rules that apply to carriers for hire allowed the trial court to hold Unimex

18

responsible for all reasonable charges that were incurred in cleaning up the spill, and for the towing and storage of the eighteen-wheeler, we disagree with Unimex's argument that Neff Towing needed to apportion its charges between the tractor, the trailer, and the cargo before it could be found liable for all of the services Neff Towing provided after the spill.

*Neff Towing Had an Adequate Remedy at Law*

Unimex also suggests that Neff Towing should have been required to show that it had no other legal remedy available to it before being allowed to recover on its quantum-meruit claim. According to Unimex, Neff Towing had a legal remedy it could have pursued through a foreclosure proceeding involving the equipment that it held in storage. *See* Tex. Prop. Code Ann. § 70.003(c) (West 2014) (providing a garageman a garageman's lien on vehicles left in a garageman's care); *id.* § 70.006(f) (West Supp. 2017) (authorizing parties holding possessory liens on motor vehicles to sell such vehicles in a public sale on the thirty-first day after mailing the notice with the information required by law to the vehicles' registered owners and respective lienholders of record for the vehicles that are to be sold).

The elements a plaintiff must prove before being allowed to recover on a quantum-meruit claim do not include requiring the plaintiff to establish that it exhausted all other potentially available legal remedies before pursuing a quantum-

meruit claim. *See Vortt Expl. Co.,* 787 S.W.2d at 944. Moreover, nothing in the Property Code reflects that the Legislature intended to make a garageman's lien the sole remedy available to garagemen to protect their rights to collect after they garage another's vehicle following a nonconsent tow. *See* Tex. Prop. Code Ann. § 70.005 (West 2014). While Unimex argues that the availability of a garageman's lien allowed Neff Towing a legal remedy that it could have pursued to ensure that it was paid, it cites no legal authority in its brief to support its claim that establishing that no legal remedy exists is a condition precedent to the plaintiff's right to recover on a quantum-meruit claim. And, regardless of whether Neff Towing might have sought to foreclose on a garageman's lien, the evidence in this case showed that it did not pursue that right.[6] We reject Unimex's argument that Neff Towing was required to foreclose on its garageman's lien before it could recover on its quantum-meruit claim.

## Conclusion

The arguments Unimex presented in its brief that we have not specifically addressed also depend on Unimex's theory that Neff Towing's charges should have been divided between the entities that owned the cargo, the tractor, and the trailer

---

[6] In its Third Amended Petition, which was its live pleading when the trial occurred, Neff Towing alleged that it was "not asserting a lien as a garagem[a]n under Texas Property Code Section 70.003(c)."

20

involved in the spill. However, the record contains sufficient evidence to support the trial court's conclusion holding Unimex responsible for Neff Towing's charges as Unimex carried the cargo that spilled. Given our conclusion that the evidence authorized the trial court to find Unimex responsible for the entirety of the amount that Neff Towing recovered, the complaints Unimex raises alleging it should not have been held jointly liable with Margo Logistics for Neff Towing's charges concerns matters that were not harmful. *See* Tex. R. App. P. 44.1(a). We overrule all eleven of Unimex's issues, including any of the arguments Unimex presented supporting its issues that we have not addressed. *See* Tex. R. App. P. 47.1 (requiring that the opinion issued by an appellate court address only those issues that are necessary to the disposition of the appeal). Accordingly, as to Unimex, the trial court's judgment is affirmed.

Next, we address the fact that Margo Logistics filed a notice of appeal. After Margo Logistics appealed, we notified it of its briefing deadline but it failed to file a brief. Therefore, we accept Neff Towing's brief as properly presenting the record as related to the judgment the trial court rendered against Margo Logistics. *See* Tex. R. App. P. 38.8(a)(3). Accordingly, awards the trial court gave Neff Towing against Unimex and Margo Logistics are affirmed.

AFFIRMED.

_____
HOLLIS HORTON
Justice

Submitted on February 8, 2018
Opinion Delivered May 24, 2018

Before Kreger, Horton and Johnson, JJ.